CORNELIA HAYES, GUARDIAN OF WILLIAM McWHITE HAYES, v. PINE
STATE CREAMERY.

(Filed 31 January, 1928.)

**1. Master and Servant—Liabilities for Injuries to Third Persons—Scope of Employment.**

One employed by the owner of a dairy for the delivery of milk to customers by means of a wagon drawn by a horse, and collecting the empty bottles from the customers, is merely a hired man or a laborer for the performance of a simple and definite task, and when he is informed of an enforced rule of the owner that no one should be permitted by him to ride on the delivery wagon, and in violation thereof he permits a nine-year-old boy to ride thereon and help him in the performance of his duty, without the knowledge of the owner, and without the necessity, and a personal injury is inflicted on the boy by reason thereof, and through negligence: *Held*, it was without the scope of the employment of the driver to allow the boy to ride, and the owner is not responsible for the damages.

**2. Same.**

The employer may not escape liability for the personal injury of a nine-year-old boy caused by an employed driver of a milk wagon in permitting the boy to ride on the wagon in violation of his rules, previously made known to the driver, when it may reasonably be inferred that the rule had been abrogated by his knowledge of its habitual violation by his drivers.

**3. Trials—Questions for Jury.**

*Held*, whether an employer had waived his rule that his employees not permit children to ride on a milk delivery wagon, by knowing that an employee habitually broke the rule is, upon proper evidence, a question for the determination of the jury.

**4. Trials—Instructions—Questions for Jury.**

An instruction is erroneous which deprives the defendant, in a personal injury case, of the benefit of its rule prohibiting the driver of its milk wagon from allowing children to ride thereon, arising under the evidence

8—195

of the case, upon the question of whether the driver was acting within the scope of his employment when the plaintiff was injured by the driver's alleged negligent act.

**5. Negligence—Proximate Cause—Evidence.**

> Evidence of a city ordinance as to the manner of driving a milk wagon upon the street is erroneously admitted upon the trial when its application to the facts of the controversy has not been shown.

CIVIL ACTION, before *Devin, J.,* at May Term, 1927, of WAKE.

The plaintiff is the guardian of William McWhite Hayes, her son, who at the time of his injury was about nine years of age.

The defendant is a corporation engaged in the business of selling and delivering milk and other dairy products to its customers in Raleigh by means of delivery wagons. On 30 December, 1925, the defendant had in its employ a man named Fetner, who was employed for the purpose of driving a horse-drawn delivery wagon for the purpose of delivering milk to the customers of defendant on each morning and taking up any empty milk bottles in the possession of customers belonging to the defendant and returning them to the plant.

The narrative of the injury to William Hayes is as follows: "He (driver) had a one-horse wagon, the usual kind of milk wagon. They kept the milk in bottles and in crates in the wagon. I did some work for him. I do not know how I came to do work for him; sometimes he would have bottles and I would help carry them. What he would not take I would carry and put in the wagon. I would get them from the houses. Sometimes I would ride on the wagon. Mr. Fetner did not say anything to me about doing the work. I asked him if I could ride with him, and he said yes. I do not know how many times I rode with him. I went more than one time, about an hour each day. I think I went with him about a month. Sometimes he would give me milk, and sometimes a nickel. He was delivering milk. He carried it around and put it on people's porches. . . . He would go to one house and I would go to the next. Sometimes we would both be on the same side of the street and sometimes on opposite sides. . . . I left home on the day I got hurt about 8:30 in the morning. I came up with Mr. Fetner at Mr. Privett's store. I did not have an agreement to meet him there. I do not remember what he said that morning. I did not get in the wagon. . . . I went about one block before I began to deliver milk. No one would drive the wagon. The horse would go by himself. The reins would be up in the wagon laying down on empty bottles or crates. No one was driving the wagon at the particular time I got hurt. I had just come from a house with some empty bottles, and when I went to get in I fell. Mr. Fetner was in the wagon. He was doing nothing. He did not have hold of the lines. There is a door to the wagon. There is no

step. There is a platform. . . . The wagon was moving. I do not know whether Mr. Fetner knew that I was there or not. He was in the wagon before I went to the house. He handed milk to me. I got out of the wagon while it was moving. Mr. Fetner did not say anything to me when he handed the milk bottles to me. I had delivered milk there before. When I came back the wagon was moving. I put my foot on the wagon and fell. I fell back toward the wheel. My leg was broken. The wheel ran over my leg. . . . I do not remember that any one else ever rode on the wagon with him and me. No other boys rode on the wagon. I never saw any other boys on it. Mr. Fetner never warned me against getting in the wagon when it was moving. He got in it when it was moving, too. I don't know how fast the wagon was going when I tried to get in. The horse was walking fast. I don't remember how much milk I delivered that morning."

Another witness for plaintiff testified: "I do not recall whether I saw Mr. Fetner allow boys to get on his wagon as he was delivering milk, but I saw boys on the wagon occasionally. I did not see boys assisting him in delivering milk, but I have seen them with others. I had seen boys delivering milk for about one year. . . . From time to time I saw boys riding on the wagon with the driver. They were not all delivering milk to houses in my vicinity. Mr. Fetner had been driving the wagon four or five months before the accident to this boy."

The defendant offered evidence to the effect that it had duly passed a rule instructing all drivers not to allow children or grown persons to be on the wagons except the drivers, and also forbidding drivers to permit children to work in delivering milk or at the plant, and that Mr. Fetner, the driver of the wagon at the time of plaintiff's injury, was duly informed of the adoption of this rule at least two months before the injury happened. The evidence of defendant further tended to show that one man could fully handle the work on that route, and it did not require more than one person to do it, and that no official of the company had received any notice whatever that Fetner or any other driver was employing boys to assist in delivering milk or permitting them to ride on the wagons.

The issues and answers of the jury thereto were as follows:

(1) Was plaintiff's ward injured by the negligence of defendant as alleged? Answer: Yes.

(2) If so, what damages is plaintiff entitled to recover by reason thereof? Answer: $8,500.

From the judgment defendant appealed, assigning errors.

*Bart M. Gatlin and W. F. Evans for plaintiff.*
*Ruark & Fletcher for defendant.*

BROGDEN, J. Is the owner of a milk wagon liable for the negligence of the driver thereof, causing injury to a nine-year-old boy, employed by the driver to assist him, or permitted to ride on the wagon or get in and out of it, all in violation of the express rules duly prescribed by the owner?

The judge charged the jury as follows: "So, if upon the testimony you find from the evidence and by its greater weight that on the occasion alleged, 30 December, 1925, the defendant, Pine State Creamery, was engaged in selling and delivering milk from a milk wagon drawn by a horse driven by the defendant's servant, employee and driver, and that the defendant's said driver requested or permitted and used the assistance of the plaintiff, a boy between 9 and 10 years of age in delivering bottles of milk and collecting milk bottles and putting them back in the wagon, and you find from the evidence and by its greater weight that on said date while so engaged and while the plaintiff was attempting to put an empty bottle back in the wagon, and the wagon was in motion, and the plaintiff fell under the wheel of the wagon and was run over and injured, and you find that the defendant's driver was in the wagon at the time and saw, or by the exercise of due care could have seen what the plaintiff was attempting to do and failed by the exercise of due care to avoid it, and you find by the greater weight of the evidence that the defendant's said driver was at the time acting within the scope of his employment and was engaged in doing work in furtherance of defendant's business, and that his acts in relation to these facts were such as were incident to the performance of the duties entrusted to him by the defendant, and you find from the evidence and by its greater weight that the defendant failed to exercise due care with respect to these circumstances to avoid injury to the plaintiff, and that such failure on the defendant's part was the proximate cause of the plaintiff's injury, you will answer the first issue yes, otherwise answer it no."

The driver of the milk wagon was employed for the performance of a simple and definite task. He was merely a hired man or a laborer and no more. The undisputed evidence on behalf of defendant is to the effect that the driver was expressly forbidden, by the rules of the company, to employ boys or to permit them to ride on the wagon. Was the driver then acting within the scope of his employment when he permitted the plaintiff to assist him or to ride upon the wagon? An employer has the right to prescribe reasonable rules and regulations to be observed by his employees for the safe and prudent operation of his business. So long as these rules are in force the employee, certainly, if no more than a hired man or laborer, is not acting within the scope of his employment when he undertakes, in direct violation of such rules, to employ additional help or assistance in the performance of his duties,

unless of course additional help or assistance is such an incident of the duty to be performed as to fairly imply that the employer authorized such employment. Driving a one-horse wagon and placing a bottle of milk upon a customer's porch and returning any empty milk bottle to the wagon is not such a duty as to ordinarily require, as a reasonable or necessary incident thereto, the employment of additional help or assistance.

The principle of law involved is thus expressed by *Hoke, J.,* in *Butner v. Lumber Co.,* 180 N. C., 612: "So far as appears, he had no authority to invite any one into the mill contrary to the rules of the company, nor did he have any right to dispose of these edgings to outsiders, and in such case our decisions are to the effect that liability may not be imputed to the owners and proprietors by reason of his speech or conduct on this occasion, the same being entirely outside of the course and scope of his employment."

But, was the rule of the company forbidding drivers to employ or to permit boys to ride upon the wagon in force at the time of the injury? The test for determining whether or not a rule is in force is thus declared in *Fry v. Utilities Co.,* 183 N. C., 281: "It has been held generally that if a rule is made for the safety of the servant or others, but its customary violation has continued so long that the master either knew of it, or could by the exercise of ordinary care have found it out and acquiesced in it, he is presumed to have consented to its repeal or to have waived obedience to it. . . . If such orders were given, the plaintiff surely was entitled to show that it had been constantly violated for a long time, with the knowledge of the drivers and those in charge of the wagon, from which the jury could well infer that the owner of the wagon had notice of its nonobservance, and that it was an order of the company more honored in the breach than in the observance, and, in legal contemplation, it had been abrogated, or at least waived."

The decisions are to the effect that if the rule has been openly, constantly and habitually violated for such a length of time that the employer in the exercise of ordinary care and diligence should have been apprised and informed of its nonobservance, then the rule is deemed to be waived or abrogated and no longer protects the employer from liability arising from the unauthorized acts of the employee. Whether or not the rule has been thus abrogated or waived is ordinarily a question for the jury.

The decisions from other jurisdictions present a diversity of opinion. Many of the leading authorities upon the subject are assembled in the opinion, concurring opinion and dissenting opinion in the case of *Higbee Co. v. Jackson,* 128 N. E., 61. In that case the Supreme Court of Ohio holds, as stated in the first head-note that "where an employee,

to whom the owner has committed the operation of an auto truck in the owner's business, permits an infant to ride on the truck in violation of his instructions, and the infant is injured by the wanton and wilful conduct of the employee, while in the course and in the scope of his employment, the owner is responsible." The theory upon which the opinion rests is that an infant who climbs upon a truck in violation of the orders or rules of the employer is a trespasser; and, although a trespasser, the employer is liable for the wilful and wanton negligence of his servant, the driver. The dissenting opinion asserts that the act of a driver in inviting a third party to ride upon a truck or wagon in violation of the express orders of the owner is entirely outside the scope of employment of the driver, and therefore imposes no liability upon the owner, citing among other cases *Dover v. Mfg. Co.,* 157 N. C., 324.

The New York Court of Appeals, in the case of *Goldberg v. Borden's Condensed Milk Co.,* 125 N. E., p. 807, holds: "Where a driver, acting contrary to express orders, invites a boy to ride on his wagon, which is started so suddenly that the boy is thrown off and injured, the employer is not liable for the injuries." The reason assigned for this holding is that the act of the driver in inviting the boy to ride, in violation of the rules of the company, was wholly outside the scope of the employment of the driver. To the same effect is *Rolfe v. Hewitt,* 125 N. E., 804. It is to be observed, however, that in the *Goldberg case, supra,* the question of habitual violation of the rule of the company was not mentioned or discussed, if such was a fact.

The whole proposition comes to this: If the driver was a mere laborer or hired man, employed to perform a simple and specific task, not reasonably requiring assistance as an incident to the performance of the task, and reasonable rules or regulations had been duly adopted by the owner and communicated to the driver, forbidding the employment of boys of tender age, and forbidding the driver to permit such boys to ride upon or get in or out of the wagon, then, if such rule was in force at the time of the injury, the plaintiff is not entitled to recover, because in so doing, under such circumstances, the driver was acting wholly without the scope of his employment. But if such rule had been expressly waived or abrogated, or if the rule had been openly, constantly or habitually violated for such length of time, that the employer in the exercise of ordinary care and diligence, knew or should have known of such habitual nonobservance, then the rule is deemed by law to have been waived or abrogated, and in such event the owner becomes liable for such negligence on the part of the driver.

The instruction complained of was correct as an abstract proposition of law, but it permitted the jury to determine whether or not the driver was acting within the scope of his employment without giving the de-

fendant the benefit of the rule which it had adopted to govern the conduct of its drivers with reference to employing the plaintiff or permitting him to be on or about the wagon, and the exception of the defendant to such instruction is sustained.

The defendant also excepted to the introduction of an ordinance of the city of Raleigh with reference to leaving any horse-drawn vehicle standing unattended. The exception to the introduction of this ordinance is sustained for the reason that there is no evidence in the present record warranting the application of the ordinance.

New trial.