MARY G. BRUCE, ADMINISTRATRIX OF THE ESTATE OF WALTER B. BRUCE, DECEASED, v. O'NEAL FLYING SERVICE, INC.

(Filed 30 November, 1949.)

**1. Aviation § 6:  Principal and Agent § 13d—**

Testimony disclosing that the president of defendant aviation corporation selected a pilot to fly in defendant's air show and gave the pilot complete charge of the plane which he was to use in the demonstration, *is held* sufficient to raise an inference that the pilot was the agent of the corporation in flying the plane in the air show.

**2. Same—**

Evidence that intestate asked defendant's pilot if he would like to have a passenger while performing a maneuver the pilot was employed to perform, and that the pilot invited intestate to "come on," and that defendant's president was present, heard the conversation, and made no objection, *is held* sufficient to raise the inference that the pilot was authorized to take intestate up with him.

**3. Aviation § 7—**

The duty owed to a gratuitous passenger in a plane is to exercise ordinary care for his safety.

**4. Same—Evidence held sufficient to be submitted to jury on question of negligence of pilot resulting in injury to passenger.**

The evidence tended to show that intestate was a gratuitous passenger in a plane in the execution of a maneuver in defendant's air show, that the particular maneuver was a "precision spin," that the pilot was instructed to begin the spin at 2,000 feet and make some three to five turns as appeared to the individual pilot to be safe and as necessity required, that he began the maneuver at 1,800 feet, made five and a half turns and apparently made no effort to pull out before the plane struck the ground.

There was expert testimony that the maneuver was safe when properly executed, that the pilot should have pulled out of the spin when at least 500 feet from the ground, and that from a height of 1,800 feet only two or three turns could be made with safety. There was testimony that the plane had dual controls, but that the pilot was in charge of the plane and was in the instructor's seat. *Held:* That the pilot was in control of the plane at the time and that he was negligent in executing the maneuver are permissible inferences from the evidence, and the granting of defendant's motion to nonsuit was error.

**5. Same—**

A person who is a voluntary passenger in a plane in the execution of a particular maneuver in an air demonstration cannot be held contributorily negligent as a matter of law in assuming the risk when there is expert testimony that such maneuver is normal and safe in the hands of a careful pilot, since the danger is not so obvious or eminent as to require an ordinarily prudent man to refrain therefrom.

**6. Negligence §§ 17, 19c—**

Assumption of risk and contributory negligence are affirmative defenses upon which defendant has the burden of proof, and in order for defendant to be entitled to nonsuit thereon they must be so plainly established by plaintiff's evidence that a reasonable man could draw no other inference.

**7. Appeal and Error § 40i—**

In passing upon an exception to the entering of a judgment of nonsuit, the Supreme Court cannot weigh the evidence but may determine only if it is legally sufficient in its inferences to be submitted to the jury.

BARNHILL, J., dissenting.

PLAINTIFF's appeal from *Stevens, J.,* June Civil Term, 1949, WAKE Superior Court.

Action for wrongful injury and death of plaintiff's intestate. Nonsuit on demurrer to the evidence.

Pertinent evidence of the plaintiff may be summarized as follows:

W. S. O'Neal, at that time president of the defendant corporation and manager of its local airport where the alleged injury was inflicted and death occurred, staged in behalf of the defendant an air show to dedicate its new airport and demonstrate airplane maneuvers, to which the public was invited, and around 8,000 persons attended.

O'Neal was president of the defendant corporation and manager of its airport and in charge of the show, himself participating in the maneuvers. The flying staff consisted of O'Neal, H. L. Bobbitt and Mack Bass.

The operation being conducted was the demonstration of "precision spins" which O'Neal testified was a normal movement performed in an airplane and, when properly done, was safe and not dangerous. It is

described as a controlled movement in which the pilot causes the plane to descend in an oscillating, spiral movement from which the pilot, never losing control, may "level off" or recover when he desired.

Before the flight began it was planned and agreed that the pilots above mentioned were to ascend to 2,000 feet and upon reaching that height to drop into the spiral movement, making from three to five turns, as appeared to the individual pilot to be safe, and as necessity required.

Just before the ascent plaintiff's intestate, who had sometimes given instruction in flying at the airport, but who was not then in the defendant's employment, approached the pilot Bobbitt, saying, "Bobbitt, how would you like to have a passenger?" And Bobbitt invited him to "come on." This was in the presence of Manager O'Neal (who so testified). He further testified that it was a matter "up to the pilot." Bruce entered the plane, taking the rear seat, and the planes took off as planned in a V .formation, Bobbitt leading in the front plane at the apex of the V. When Bobbitt's plane reached an altitude of 1,800 feet, instead of the 2,000 feet as planned, he started in his spin, or spiral movement, made five and one-half turns, apparently made no effort to recover and the plane struck the ground. Both Bruce and Bobbitt were instantly killed.

Witness O'Neal, qualifying as an expert, testified that Bobbitt should have completely recovered to normal straight flight at least 500 feet from the ground and that it was unsafe to continue the spiral movement any closer. O'Neal, on seeing the airplane strike, throttled his engine hard and, grading his turns, went down and landed. O'Neal gave his expert opinion that the crash was due to the fact that the pilot Bobbitt, in demonstrating the spin, "overdid it—tried to make it too good" and went too low; that if he had finished in three spins he would still have been 1,000 or 1,200 feet above ground; starting to spin at 1,800 feet he could not make more than three turns safely. The pilot Bobbitt could tell by his altimeter the height of the plane. Bobbitt was 50 or 100 feet from the ground when he went into the fourth or fifth spin. Witness further stated that he was flying for the O'Neal Flying Service.

On the cross-examination this witness stated that he did not know what went on in the cockpit of the plane, could not see and could only assume. He described the plane as an Aeronca Tandem Model, 7AC, demonstrating with a model the maneuver of spinning and declaring it to be a safe maneuver when properly executed. He stated that Mr. Bobbitt was in the instructor's seat, the front seat, and Mr. Bruce was a passenger sitting in the rear seat. The plane had dual controls—two pairs of controls— so that either person had a means of controlling its flight. The controls, however, were coupled together so that a movement of one device caused a corresponding simultaneous movement in the similar member of the other—the control sticks and pedals executing exactly the same movement.

On re-direct examination the witness stated Mr. Bobbitt was in the front seat and doing the piloting.

R. H. Edwards, who qualified as an expert, stated that he was chief pilot of Serv-Air, Inc., which operates an airport near Raleigh and was present and witnessed the fatal flight. He testified that the spiral maneuver referred to was safe when properly performed and that an Aeronca plane was suitable to use in that maneuver; that if the movement was executed from an altitude of 1,800 feet the observed number of turns could not be made with safety. From that altitude, he testified, only two or three turns could have been made with safety. He testified on cross-examination that either of the persons in the plane could have controlled its movements—but if the pilot in front had set his stick and was pushing on the pedals controlling the spin, the man in the rear seat would have to overcome his force.

B. W. Stevens, a news photographer, also a pilot, testified that he saw the three planes reach their altitude and start spinning in successive order. The lead plane was practically on the ground when the third plane began spinning. It had made five and one-half turns when it hit the ground. Photographs taken by this witness were used in illustration. The witness described the motion of the plane in making the spiral as a leaf falling of its own weight.

Other evidence was introduced on the issue of damages and matters not concerned with the subject of this decision.

At the conclusion of plaintiff's evidence, the defendant, offering none, demurred and moved for judgment of nonsuit. The motion was allowed, and plaintiff excepted and appealed.

*Simms & Simms and Douglass & McMillan for plaintiff, appellant.*
*Murray Allen for defendant, appellee.*

SEAWELL, J. In this action for negligent injury resulting in death of plaintiff's intestate, nonsuit was allowed on demurrer to the plaintiff's evidence, and the defendant was, therefore, not under the necessity of offering any. Decision requires consideration only of the nonsuit, which gave plaintiff's case the *coup de grace.* The trial judge gave no intimation as to the basis of his ruling, and it is, therefore, referable to any reason which may justify it. The defendant-appellee suggests several, any one of which, it is contended, will support the judgment: That the evidence contains no inference of negligence on the part of the pilot in charge; that the pilot, Bobbitt, was not at the time, and for the purpose undertaken, an employee or agent of the defendant, so as to make the latter liable on the principle *respondeat superior;* that the plaintiff is barred from recovery by his assumption of the risk in participating in an

obviously dangerous maneuver; that he was contributorily negligent; and that he invited or willingly suffered the injury resulting in death, ("*volenti non fit injuria*").

We consider these questions, perhaps not in order, but as they are touched by the evidence.

The evidence tends to show that Bobbitt was an employee of the defendant and as such was given complete charge of the plane which operated in the air show, or demonstration. O'Neal, the president of the defendant company and the manager of this enterprise, testified that Bobbitt was selected by the defendant for this purpose. This is sufficient to raise an inference of agency. Mecham on Agency, (2d Ed.), sec. 1859; *Irwin v. Judge,* 81 Conn. 412; *Hill v. Morey,* 26 Vt. 178; 57 C.J.S., Master & Servant, sec. 563.

The circumstances under which Bruce entered the plane also raise the inference that the pilot was authorized to take him up and owed to him the duty, imputed to the defendant, to refrain from negligent injury. The invitation was extended to Bruce by Bobbitt within the hearing of O'Neal and its significance was at once apparent. It did not require the spoken word, merely his silent acquiescence to give authority. *Wright v. Wright,* 229 N.C. 503, 506, 50 S.E. 2d 540; *Russell v. Cutshall,* 223 N.C. 353, 26 S.E. 2d 866; *Hayes v. Creamery,* 195 N.C. 113, 141 S.E. 340; *Fry v. Utilities Co.,* 183 N.C. 281, 111 S.E. 354; Schwartz, Trial of Automobile Cases, sec. 373.

The measure of defendant's duty is that of ordinary care. *Wright v. Wright, supra.* The above citations are concerned with automobile law but Agency, the measure of negligence, and other principles discussed are equally applicable to the law of aviation. *Wilson v. Colonial Air Transport, Inc.,* 278 Mass. 420, 425, 23 N.C.C.A. (N.S.) 384; *Bird v. Louer,* 272 Ill. App. 522; *Rogina v. Midwest Flying Service,* 325 Ill. App. 588, 60 N.E. 2d 633; *Interstate Airlines v. Arnold,* 127 Neb. 665, 256 N.W. 513; *Apartan Aircraft Co. v. Jamison,* 181 Okl. 645, 85 P. 2d 1096; 2 C.J.S., Aerial Navigation, sec. 19, p. 907.

The legal sufficiency of the evidence to go to the jury is more strongly challenged in two respects: It is contended that the testimony of expert witnesses concerning the crash of the plane and its cause is merely guesswork, without probative force, and does not rise to the dignity of evidence; and that, at any rate, there is no evidence to determine which of the occupants of the plane—whether the pilot put in official charge, or Bruce, who entered as a passenger—had control at the time of the spinning maneuver which resulted in the crash and death of Bruce.

While the cross-examination elicited answers from the witnesses giving expert opinions as to the operational failure led to answers which appellee construes as withdrawing their statements, it may be conceded there were

some assumptions, that part of this evidence was directed to the circumstance that they could not, and did not, see what took place inside the cockpit, and had made some assumptions as to who was in charge. We cannot find that in any place they withdrew their statements as to the fault in conducting the maneuver, regardless of whether Bobbitt or Bruce was at the controls.

O'Neal, the president of the flying service and manager of the demonstration, after testifying to the agreement which was made between the three pilots, himself, Bobbitt and Bass, made for reasons of safety, testified that flying in V formation he watched every movement of Bobbitt's plane from its top altitude down to the ground, and counted the turns; and testified in this respect as follows: "At a height of 1,800 feet Mr. Bobbitt, being No. 1, he started on his spin. I noticed him when he started to spin, and he spun and spun, and it appeared to me that he went into a tight spiral, that is a maneuver that you wouldn't know from a spin, hardly, in seeing it from the ground; you would think it was the same thing. It appeared to me that he went into a tight spiral, and he made five and a half turns—I counted them—then he struck the ground . . . straight in, nose down . . . still curving," . . . and apparently "made no effort whatever to recover." For the sake of safety "he should have completely recovered and gone into a normal, straight flight at least 500 feet above the ground."

In stating that he had 15 years' experience in operating airplanes and observing their operation, he testified, "My opinion was that the pilot demonstrating the spin just overdid it a little bit too much . . . apparently he tried to make it too good. He just went too low." He further testified that from the elevation at which Bobbitt began the spin only about three turns could have been made with safety and that the pilot was not more than 50 or 100 feet from the ground when he went into the fourth or fifth spin.

*Smith v. Whitley,* 223 N.C. 534, 27 S.E. 2d 442, has no application whatever to the facts of this case. In that case neither the pilot nor the passenger was killed, and both testified. The plaintiff Smith testified "that the plane went into a spin and crashed and I don't know why." The pilot Nelson testified, "I don't know just why the plane crashed. It just came down in a spin with the nose to the ground."

It will be seen from this short *per curiam* opinion that the plaintiff really based his case on the fact that the pilot was unlicensed and, of course, failed to show this as a proximate cause of the injury.

In the instant case the spin was not accidental; it was a planned maneuver and there is evidence to be submitted to the jury as to the negligence of the operation which caused the crash.

That question, that is, whether Bobbitt was at the controls and responsible for the movements of the plane, is not without supporting evidence. Permissible inference that Bobbitt was at the controls at the time may be made from the attending circumstances although no eye saw what took place in the cockpit. Bobbitt was put in official charge of the plane and its operation, in the forward seat of the cockpit. Bruce entered as a passenger. It is hardly conceivable that their relative positions as passenger and pilot changed during the maneuver since Bobbitt was selected for that purpose and the responsibility placed upon him. There is a strong inference that he continued the operation of the plane during maneuvers. It is in evidence that to cause the oscillating or circular movement of the plane the pilot would have to pull the stick back to the seat, or almost to the seat, and push with extended leg, either the right pedal or the left pedal, according as a right turn or a left turn was desired; and that in this position the person in the rear seat, if minded to take control, could not wrest control from the man in front, except with difficulty, and one witness stated, perhaps not at all.

The rule requires us to consider the evidence and all its inferences in the most favorable light for the plaintiff. Mere imaginative or speculative possibility as to what may have occurred is not sufficient to overcome the inferences raised by this evidence, or the permissible inference that Bobbitt was in control.

Under the evidence the plea of assumption of risk is not tenable. We cannot assume, against the evidence before us, that the enterprise on which Bruce accompanied the pilot Bobbitt, even if known to him in advance, (and of this there is no evidence), involved such an obvious or imminent danger to life and limb as to require an ordinarily prudent man to refrain from participating in it. In so far as the flight itself is concerned, it is recognized as a convenient mode of travel, regularly and extensively used, and reasonably safe. The evidence, without any witness stating *contra,* tends to show that the plane in which the demonstration took place was fit and suitable for the purpose; and that the maneuver itself was normal and safe in the hands of a careful pilot.

The contention that plaintiff is barred from recovery because his intestate negligently contributed to his own death cannot be maintained here as a matter of law on the present state of the evidence. If addressed to the suggestion that Bruce may have been in control of the plane at the time of his injury, there is no evidence of that fact. If advanced on the theory that he voluntarily participated in the maneuver, as suggested, being executed at the time of his injury and death, as we have already stated in dealing with the question of assumption of risk, the evidence tends to show that the operation under way at the time was not of a

character which would attribute negligence to a reasonably prudent man in engaging in it.

The pleas of assumption of risk and contributory negligence are both affirmative and require a showing on the part of the defendant to be considered at all; and to prevail as a matter of law, as to either, it must plainly appear from the evidence that a reasonable mind could draw no other inference.

As we have stated, assumption of risk and contributory negligence are affirmative pleas and ordinarily must be left to the jury. We find no evidence in support of either plea that would justify the court in taking it from the jury.

Our task as an Appellate Court is merely to judge of the probative value of the evidence and not its weight; to say whether there is a legal sufficiency in its inferences to be submitted to the jury. Applying these principles of law, we conclude that there was error in withdrawing the evidence from the jury, and the order of nonsuit is, therefore,

Reversed.

BARNHILL, J., dissenting: The majority conclude that the record discloses sufficient evidence of negligence to require the submission of appropriate issues to a jury. The conclusion is: There is evidence the pilot did not pull out of the spin in time to prevent a crash, and this is evidence of negligence. To this conclusion I must register my dissent.

The essential facts are substantially stated in the majority opinion. The only testimony offered for the purpose of establishing the alleged negligence was the testimony of two expert pilots.

W. S. O'Neal testified that Bobbitt could have made three spins in safety but that in his opinion he—Bobbitt—"just overdid it a little bit too much . . . apparently he tried to make it too good. He just went too low." He later testified that it is impossible to give an explanation of what happened. "Nobody knows what happened there . . . I couldn't see anything but the plane . . . I did not know what was going on in that plane . . . I just assumed what they did."

R. H. Edwards testified that Bobbitt could have made three spins in safety; that in his opinion the crash was caused by the pilot doing too many spins before he recovered. "When the plane started spinning it continued to spin right on into the ground." He testified further on cross-examination that all he was saying about it is a surmise or an assumption on his part from seeing the plane start to spin and spinning down and hitting the ground; that he was a mile away.

The substance of this testimony is this: the plane went into a spin maneuver and the pilot failed to peel off and pull out of the spin in time to prevent a crash. Otherwise it is nothing more than conclusion testi-

mony frankly based on surmise and not on fact, if, indeed, the witnesses said or intended to say more than that.

Whether the pilot's failure to peel off was due to atmospheric conditions or to some failure of the plane or to the voluntary act of the pilot does not appear. The spin was begun before the plane reached the agreed altitude. Perhaps the pilot could not avoid it. In any event he did not peel off and pull out of the spin in time to prevent a crash. It takes no expert or seer to reach this conclusion. The fact is self-evident. But this is not sufficient. It is common knowledge "that airplanes do fall without fault of the pilot," and evidence the plane went into a spin and crashed is not sufficient to repel a motion to nonsuit. *Smith v. Whitley,* 223 N.C. 534, 27 S.E. 2d 442; Anno. 99 A.L.R. 192; *S. v. Vick,* 213 N.C. 235, 195 S.E. 779.

Was the failure to pull out of the spin and the resulting crash proximately caused by the negligence of the defendant? This is the determinative question which this record fails to answer.

True the plane did not peel off in time to prevent a crash, but why? Was it due to error of judgment or carelessness on the part of the pilot? Did the control stick jam, or the engine stall, or the aileron cable break, or the rudder bar fail to respond, or did the pilot-passenger interfere with the controls? These and like questions are unanswered except by mere conjecture. The expert witnesses surmise but frankly admit they do not know.

It is not sufficient for plaintiff to show that there must have been some negligence, somehow, somewhere. This may be said of almost every automobile collision. He is required to prove more than the possibility or probability of negligence. He must establish want of due care in some particular. In my opinion, therefore, the plaintiff has failed to make out a case sufficient to repel the motion to dismiss as in case of nonsuit.

It is difficult, if not impossible, to distinguish this case from *Smith v. Whitley, supra.* There, "the plane went into a spin and crashed and I do not know why." "I don't know just why the plane crashed; it just came down in a spin with the nose to the ground." Surely there, as here, the pilot failed to peel off in time to prevent a crash, or else there would have been no crash.

In that case we affirmed the judgment of nonsuit. The court below relied on that decision in granting nonsuit here, but we reverse. If we intend to overrule that decision we should say so, to the end that Bench and Bar may know which case they should follow in the future.

If the fact the plane went into a spin and the pilot, for some unexplained reason, failed to peel off in time to prevent a crash permits an inference of negligence, the judgment should be reversed. Otherwise not.

It seems to me we settled the question in the *Smith case,* to which I think we should adhere. I therefore vote to affirm.

NOTE: The majority opinion now cites and undertakes to distinguish the *Smith case*—the pilot and passenger were killed here, they survived there. Even so, I have fully expressed my views and am content to rely on the facts as disclosed by the two records.

WINBORNE, J., concurs in dissent.