Charles DRAHMANN'S ADMINISTRA-
TRIX (Ann A. Drahmann), Appellant,

v.

James H. BRINK'S ADMINISTRATRIX
(Marian Brink), Appellee.

Court of Appeals of Kentucky.

Jan. 27, 1956.

Rehearing Denied June 8, 1956.

Davies & Hirschfeld, Newport, for appellant.

Marion W. Moore, Blakely, Moore &
Blakely, Covington, for appellee.

HOGG, Judge.

This is an appeal from a judgment entered upon a directed verdict rendered in favor of decedent's, Brink's, estate in an action brought by the administratrix of the estate of the decedent, Drahmann, for his alleged wrongful death, resulting from the crash of an airplane in which Brink was also killed. The two decedents were the sole occupants of the airplane at the time of the crash.

The deceased, Brink and Drahmann, were associated in business and lived across the road from each other. Brink asked Drahmann to accompany him in his private airplane to Florida. Brink was at that time the owner of a 1950 Beech Bonanza airplane, which was used for the trip. He had owned the airplane for approximately two years. Brink,' an experienced pilot with approximately 750 hours flight time, was in charge of and operating the airplane when it took off from Boone County Airport, Erlanger, Kentucky, on August 3, 1952. Drahmann was not a pilot and knew nothing about operating the plane. They flew to Miami, Florida, and after concluding the business in Miami they started on the return flight to Kentucky. Brink was piloting the plane on this departure also. They stopped and had lunch at Macon, Georgia. The evidence does not indicate who was at the controls when they took off from Macon. When they reached a point over the Fulton County Airport, Atlanta, Georgia, the plane crashed and immediately exploded. Both men were burned to death. The distance between Macon and Fulton County Airport is ninety-six miles, and the normal flying time is from twenty-five to thirty-five minutes. The crash occurred at 3:05 p. m. on a clear, normal day, after taking off from Bacon between 1:15 and 1:30 p. m.

The airplane was equipped with dual control rudder pedals and "throw-over" type flap control wheel. The wheel could be easily manipulated to be in position for operating the plane from either the left or the right seat of the airplane by pulling a small button on the arm supporting the wheel. The rudder control pedals could also easily be made active by reaching down on the floor, where they were located on both sides of the plane, and moving a small lever on the side of the pedal.

The evidence concerning the accident is to be ·found in the uncontradicted testimony of three eyewitnesses. They were licensed pilots, with many flying hours in the air, who were working at the Fulton Airport when the plane came in. They observed the maneuvers of the plane until it crashed.

The eyewitnesses testified that the Brink plane approached the landing field on runway 26, which was the runway in use on that day because it was running up-wind. The plane overshot the runway as it came in for a landing with landing gear and flaps down. After using up about two-thirds of the runway, the pilot started to retract his landing gear and gained an altitude of approximately two-hundred feet as he turned to the left in a steep bank. The plane lowered its landing gear again, and after making about a 180 degree turn, an attempt was made to land on another runway (numbered 2) which intersected runway 26. The second attempt was made partially down-wind and cross-wind. It appears that too much of runway 2 was used up before the plane could make contact with the ground, and within two to five feet of the ground the pilot pulled up sharply. The witnesses agreed that on the pull-up away from this second attempted landing, full power was not applied, causing the plane to "mush" or "stagger." In the opinion of these witnesses, the maneuvers of the plane after it left runway 2 did not indicate that the plane was managed by an experienced pilot. The engine did not miss at any time, and the maneuvers of the plane were in response to human direction. The plane veered to the left approximately one thousand feet, lost altitude, and crashed into a river bottom, immediately catching fire. The witnesses went at once to the scene of the crash, and they testified that the propeller gear of the plane was in high pitch, whereas it is normal to put it in low pitch while landing. The physical evidence did not indicate who might have been in control of the plane by the position of the control wheel or whether the rudder control pedals were disconnected.

■ Since the airplane crash causing the death of both men occurred in the state of Georgia, the substantive law of that state governs this case. Georgia Code, section 11–107, provides as follows:

"The liability of the operator of an aircraft carrying passengers, for in-

jury to or death of such passengers, shall be determined by the rules of law applicable to torts on land arising out of similar relationships."

The Georgia Code was applied in Sammons v. Webb, 86 Ga.App. 382, 71 S.E.2d 832, which involved the death of a guest passenger in an airplane. It was there held that the degree of care owed by an operator of an aircraft to a guest is the same as that governing the operator of a motor vehicle under similar circumstances, and in either, the defendant operator is liable for the injury of the guest only in the case of gross negligence. This court has recognized the necessity of establishing gross negligence in accidental injuries occurring in Georgia. Ansback v. Greenberg, Ky., 256 S.W.2d 1.

The question to be answered is: Was the evidence sufficient to allow the jury to decide whether Brink was negligent and whether his negligence was the proximate cause of the death of Drahmann?

■ The evidence establishes that according to the flying rules of the Civil Aeronautics Authority, the rules of the Fulton County Airport management, and proper flying practices, the pilot of the Brink plane violated several rules while attempting to land. First, he approached landing strip 26, the one in use that day, at an altitude too high and at a speed too great to permit him to land, and as a result overshot the runway. Second, he attempted to climb, after overshooting the runway, with his gear and flaps down, thus causing a drag and interfering with the capacity of the plane to gain altitude. Third, the correct pattern for a pilot who overshoots the runway is to apply power to gain an altitude of 400 to 600 feet and make a 90-degree turn to the left; to gain more altitude to about 800 feet and make another 90-degree turn to the left, bringing the plane parallel to the landing field; and, after proceeding to a point where he could safely approach the landing field, to make another 90-degree turn and bring the plane down for a landing. Contrary to this pattern, after climbing over the runway 26 to an altitude of 100 to 150 feet and while still over the field, he brought the plane into a steep left bank and attempted to land on grass runway 2, which was an intersecting runway not in use. Fourth, he attempted this landing partially down-wind and partially cross-wind, when his landing should have been only into or with the wind. Fifth, he also attempted this landing about midway the length of the strip, depriving himself of sufficient runway to effect a safe landing, instead of using the full length of the runway. Sixth, after being unable to land, from a height of from 2 to 10 feet, he again attempted to climb without giving his motor additional or full power and with the propeller in high or cruise pitch; thus he limited the ability of the plane to gain either altitude or air speed, both of which were necessary to keep the plane aloft. As a result of the failure to have sufficient power on the last climb, the plane was caused to "mush" or "stall," and it crashed to the ground. In view of the evidence heretofore indicated, it is concluded that there was sufficient evidence of gross negligence to require the submission of the case to the jury on this point.

■ However, the most difficult problem is determining whether or not there was sufficient evidence that Brink had control of the plane at the time of the crash and, therefore, that his negligence, if it be gross or not, was the proximate cause of the accident. In order that the facts of the case at hand can be compared with the cases hereinafter discussed, it is necessary to reemphasize the significant facts. There is no direct testimony that Brink was actually the pilot at the time of the crash. The evidence establishes that he was in the control of the plane at all known take-offs during the trip, except the take-off from Macon on which there is no testimony of who was piloting the plane. Brink was the owner of the plane, and he was an experienced pilot who had made this same trip and similar trips before, whereas Drahmann had no flying experience at all. The fact that the plane was attempting to land immediately before the crash is also a significant factor. To authorize submission of this case to the jury, it must be

determined by the law in Kentucky that these facts warrant an inference or rebuttable presumption that Brink was the pilot at the time of the crash. Goodrich, Conflicts of Laws, section 84. But there has been no case decided by this court on this point which is comparable to the instant case. Cases in other jurisdictions refusing to apply such an inference or presumption will be analyzed on their facts, and, therefore, it is necessary to discuss them somewhat in detail.

In re Hayden's Estate, 174 Kan. 140, 254 P.2d 813, 36 A.L.R.2d 1278, was a case where three passengers were killed in a crash of a plane equipped with dual controls, one in front of each seat, which could be operated during flying maneuvers by either of two persons in the two front seats. The plane could be taken off or landed only from the left front seat. The owner of the plane, who had several hundred flying hours, was seated in the left front seat at the moment of the take-off, and one of the other occupants, who had a small amount of flying experience, was in the right front seat. The third occupant was in one of the rear seats. The crash occurred about ten minutes after take-off, and no witnesses were able to observe the plane's activities. There was evidence that after the crash the owner was found in the same seat, and the steering wheel in front of him was bent upward, which allegedly indicated he had hold of the wheel at the time of the crash. The owner had previously been ruled off an airport for negligent flying. The court said that the facts of this case were not sufficient to create a presumption and warrant an inference that the owner continued to operate the plane and was at its controls at the time of the crash. This case has distinguishing factors in that all of the occupants had some flying experience and the plane was not attempting to land at the time of the crash.

In Morrison v. Le Tourneau Co. of Georgia, 5 Cir., 138 F.2d 339, 1 Avi. 1114, the court refused to allow plaintiff to recover because the proof of negligence was inadequate, and the evidence was as consistent with the theory of an unavoidable accident as it was with negligence. The plane was two seated with controls in front of each seat. Both of the ignition systems were found to be on after the crash. Witnesses testified that they had heard the motor popping, and had seen a wing break off before the plane crashed. The facts do not indicate whether or not the plaintiff's decedent was a pilot. The plane was not attemping to land at the time of the crash.

Madyck v. Shelley, 283 Mich. 396, 278 N.W. 110, 1 Avi. 748, is not analogous because both occupants of the airplane, equipped with dual controls which were operable from either cockpit at the time of the crash, were experienced pilots and the crash did not occur in the process of landing. The court said that evidence that the pilot in the front cockpit had the sole right to fly the plane under the airport's rules, that he was part owner of the plane, and that the plane was in the air engaged in stunt flying, did not aid in creating a presumption that defendant's decedent was operating the plane at the time of the crash. Budgett v. Soo Sky Ways, Inc., 64 S.D. 243, 266 N.W. 253, 1 Avi. 612, is not analogous either, for the same reason as the Madyck case, and, too, the plane was being demonstrated for sale to the plaintiff's decedent, indicating that he might have been at the controls trying the plane out for its purchase. And in Michigan Aero Club v. Shelley, 283 Mich. 401, 278 N.W. 121, 1 Avi. 750, the dual controls, which were not in operation before the final flight, were connected just prior to the fatal crash, and both occupants had flying experience.

Towle v. Phillips, 180 Tenn. 121, 172 S.W.2d 806, 1 Avi. 1086, is a case where the plane was owned by Webb, who had a pilot's license and some experience in operating planes. It had dual controls, one before each seat, and it could be operated with either set of controls. Two times Webb took some of his friends up for rides in his plane, and on the third trip he took Towle up. After the plane flew off for a short distance and returned at a low altitude, it went straight up, stalled, and fell to the ground, killing both passengers. In re-

fusing to apply the doctrine of res ipsa loquitur, the court said it would be merely a guess to say that Webb's negligence was the responsible agency, and defendant's motion for a directed verdict was sustained. Although the court said that it was possible that Webb intended to land, the crash did not occur in the process of an actual landing. Whether or not these facts should create the inference that the experienced pilot was at the controls was not expressly decided. It was not brought out whether Webb was the only experienced flier in the plane.

In Hall v. Payne, 189 Va. 140, 52 S.E.2d 76, 2 Avi. 14,845, a young man who had received his pilot's license a few days before the accident secured a plane which had two seats, one behind the other, and each seat had controls. When one set of controls moved, the other moved with it. The young pilot asked a thirteen-year-old boy to take a flight with him, and it ended in a crash killing both occupants. There was evidence by eyewitnesses that the plane had sputtered and popped before the crash. An expert witness testified that in his opinion the plane was not attempting to land when the crash occurred. The Virginia court affirmed the lower court's decision entering a judgment for the defendant notwithstanding the jury's verdict in favor of the plaintiff. The court based its judgment on the elements in the case that the occupant in the rear seat could have interfered with the controls always available to him, and that there was evidence showing there could have been motor failure.

The appellee quotes extensively from Davies Flying Service, Inc., v. U. S., D.C. W.D.Ky., 114 F.Supp. 776, 778, in support of his position that there can be no jury question where the evidence is equally consistent with no negligence as it is with negligence. We have already decided in this case that there is sufficient evidence of negligent flying to take the case to the jury, and the Davies Flying Service case is not factually similar to this case, for there was the element of bad weather and motor trouble present. The facts show that Davies Flying Service delivered a plane to Mr. Fagan, Safety Engineer for the Civil Aeronautics Administration, for his use in making a flight on business. The facts do not show whether or not the plane was dual controlled. Mr. Fagan, who was a highly skilled pilot, was accompanied on the flight by Mr. Gerard, who was not a pilot. They flew to Lexington, Kentucky, without incident, but were delayed on their return to Louisville by bad weather. They finally obtained a clearance for their return flight. Some distance from Lexington fog was encountered and the plane crashed to the ground, killing both occupants. The plane was found to be headed in the opposite direction from Louisville. Several witnesses testified that shortly before the plane fell, fire was seen coming from the plane, and the engine was making "popping" and "sputtering" noises. The claim was dismissed, the court saying:

> "Whether the fall was due to the negligence of the pilot or to some functional failure of the essential operating mechanism of the plane, some of which, according to the testimony of plaintiff's mechanic H. W. Schuermeyer, had been the subject of previous complaint, or to some other fortuitous event which rendered the pilot helpless, remains an inscrutable mystery."

On the other hand, in support of the appellant's argument that these facts create an inference or rebuttable presumption that Brink was the pilot of the plane at the time of the crash, the appellant cites Schumacher v. Swartz, 68 Pa.Dist. & Co. 3, 2 Avi. 15,006. That is a case where Fischer, an experienced professional pilot, who owned the plane, and Schumacher, a novice with a student's license, were seated in the front and rear cockpits of a plane having dual controls. The plane had flown uneventfully within sight of the airport for one-half an hour before the crash occurred. The plane was put through three violent acrobatic maneuvers, consisting of the same pattern of diving within 25 feet of the ground and pulling straight up. On the third such maneuver, the plane stalled at an altitude of about 300 feet and dived straight to the ground, killing both occu-

pants. The jury found that Fischer, who was the owner of the plane, was in exclusive control of the plane and that the accident had been caused solely by his negligence. The District Court of Philadelphia County affirmed the judgment entered on the jury's verdict, stating that only Fischer had the skill to perform such maneuvers. The style of the maneuvers resembled that of Fischer, and did not resemble the cautious, smooth style that Schumacher had. Fischer had often made a sharp right turn contrary to airport traffic pattern, and the pilot of the plane made such a turn while performing the acrobatics. Fischer bought the plane expressly to learn stunting, and he had been shown this particular maneuver a few hours before the accident. All of these facts, the court said, were sufficient circumstantial evidence to establish the status of the operation of the plane by Fischer, and such must be presumed to continue until the contrary is established by the evidence. The burden rested on the defendant to overcome the presumption.

Also, in Bird v. Louer, 272 Ill.App. 522, the court said a presumption was created that a Mr. Myer was piloting the plane at the time of the accident, and affirmed the lower court's judgment, sitting without a jury, in favor of the defendant because of insufficient evidence that Myer was negligent. There the plaintiff's wife was killed in a mid-air crash between two plains. Myer, who was an experienced pilot with the reputation of extraordinary skill, was seated in the rear in the two cockpitted plane, which could be operated from either cockpit. Mrs. Bird, who was not a pilot and had never taken lessons, but had frequently ridden in planes, occupied the front cockpit at the time of the take-off. See also, Bruce v. O'Neal Flying Service, Inc., 231 N.C. 181, 56 S.E.2d 560, 12 A.L.R.2d 647, 2 Avi. 15,075.

In our research we have been unable to find any automobile cases decided by us involving the question of who was driving at the time of the accident when there was no direct testimony by eyewitnesses or survivors. We can draw no analogy there. However, other jurisdictions have held that a rebuttable presumption or inference arises that the defendant was driving upon proof of the defendant's ownership of the automobile or upon proof that he was driving shortly prior to the accident. Rodney v. Staman, 371 Pa. 1, 89 A.2d 313, 32 A.L.R.2d 988.

None of the cases analyzed are factually like the situation confronting us in the case at hand. All the cases can be distinguished by one fact; namely, that in no other case was the plane in the process of landing. It appears to us that a man like Drahmann, with no flying experience, would not attempt the difficult and skilled maneuver of bringing a plane in for a landing. Brink had the skill and experience to make the landing properly. Any man has an instinct for self-preservation. The throw-over type of control wheel that Brink's plane had could be operated by only one person at a time, and the movements of the plane over the field indicated that a person with experience was performing them, for the plane started to raise the landing gear and make a left bank consistent with approved flying pattern. The eyewitnesses testified that after the plane pulled up from the second runway, it looked as though an inexperienced man was piloting. It would be difficult to conceive that Brink had attempted the first and second landings, and then changed the position of the wheel to in front of Drahmann, allowing him to take over. However, that would be for the jury to decide. None of the planes in the cited cases had this type of flap control wheel that could be in front of only one person at a time. There are also other distinguishing factors. Brink owned the plane, and he was piloting it on all take-offs, except the one at Macon and it is not established who was piloting at that time. In many of the cited cases all of the passengers had flying experience.

The facts of the case at hand, when viewed together, seem to us sufficient to create a reasonable inference and rebuttable presumption that Brink was the pilot of the plane at the time of the crash. Thus, the appellant's evidence was sufficient to allow

the jury to determine whether Brink was grossly negligent and whether his negligence was the cause of the crash killing Drahmann.

The judgment is reversed for proceedings consistent with this opinion.

CAMMACK and SIMS JJ., dissent.

SIMS, Justice (dissenting).

I cannot agree with the majority opinion and as it will have a far-reaching effect, I feel constrained to dissent. It is elementary that negligence cannot be presumed and must be proved. The fact that the conditions and circumstances surrounding an accident make it difficult, or at times even impossible, to prove negligence, does not in the least abrogate this rule.

Under the uncontroverted facts in the record, the cause of this fatal crash, or whose negligence, if anybody's, was responsible for it, is left purely to surmise and guesswork. It could have been caused by a latent defect in the plane, or by the passenger, Drahmann, becoming excited and attempting to grab the controls, or in some other manner interfering with Brink, when the latter overshot the runway when he first attempted to land. Of course, this is mere guesswork. But no more so than to say there was sufficient evidence of Brink's negligence to take the case to the jury.

The record shows it took practically one and a half hours for the plane to fly from Macon to Atlanta, when the usual flying time for such a craft between those two cities is from 25 to 35 minutes. This would indicate there was something wrong with the plane or the instruments by which it was navigated. Could it be said with any assurance that Brink's negligence was the cause of this unusual flying time between these two cities, or would that only be a guess? Manifestly, it would be guesswork and surmise to say from this record what caused the plane to consume an hour and a half flying time between these two cities.

It could be argued that the passenger, Drahmann, was in control when the plane crashed, and it was negligence on the part of Brink to turn the flying or landing of the plane over to Drahmann, who was not a pilot and had never flown a plane. But where is the evidence that Brink turned over the flying of the plane to Drahmann, or that the latter was at the controls when the crash occurred? There is none in the record. Again, it would be but a guess to say Drahmann was at the controls when the plane attempted to land.

There is a well-established rule in this jurisdiction that while negligence may be proved by circumstantial evidence alone, yet it cannot be presumed; and where evidence of negligence is so unsatisfactory as to require surmise or guesswork as to how the accident occurred, the case is not for the jury but one for the court to direct a verdict for defendant. This rule is both ancient and sound and I do not want to see it abrogated as I fear the majority opinion will. See Hollon v. Greyhound Corp., Ky., 272 S.W.2d 329.

For the reasons given, I most respectfully dissent. I am authorized to state that Judge CAMMACK joins in this dissent.