**Harry E. FERGUSON and wife, Juanita Ferguson, and Thomas Ferguson, Appellants,**

v.

**Sherwood H. SMITH, Jr., Appellee.**

**No. 7666.**

United States Court of Appeals Fourth Circuit.

Argued June 13, 1958.

Decided July 30, 1958.

---

Ferguson and their son, Thomas Ferguson, of Sylva, N. C., for the recovery of damages for personal injuries sustained by the plaintiff. The case was tried by the court, sitting without a jury, and resulted in a judgment for the plaintiff in the sum of $16,500.00, and from this judgment defendants have appealed. Pursuant to Rule 52 Federal Rules of Civil Procedure, 28 U.S.C.A., the district judge filed a memorandum of opinion, from which his findings of fact and conclusions of law sufficiently appear. Referring to findings made by a judge sitting without a jury, this rule provides:

"Findings of fact shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge of the credibility of the witnesses."

Viewing the evidence and the inferences to be drawn therefrom in the light most favorable to the plaintiff, the facts may be briefly stated as follows:

Plaintiff, Sherwood H. Smith, Jr., hereinafter called "plaintiff", and defendant Thomas Ferguson, graduated at the University of North Carolina on June 4, 1956. They had attended the University together for four years, roomed together their last year, were both members of the Naval ROTC, and were close friends. The parents of both young men attended commencement exercises at Chapel Hill at the conclusion of which, accompanied by Miss Eva Hargrave, then plaintiff's fiancee, now his wife, the parents and the young men proceeded to the Ferguson home at Sylva, N. C., where the Smiths and Miss Hargrave had been invited to visit for a few days until the young men were to report for active duty in the Navy, in which each of them had been awarded a commission at the time of graduation. The Fergusons invited their guests to go with them on a trip to Lake Thorpe, where the Fergusons had a cabin, for an overnight visit. Mr. and Mrs. Ferguson and plaintiff's parents left Sylva around noon, going directly to the cabin.

Kester Walton and Herbert L. Hyde, Asheville, N. C. (Harkins, Van Winkle, Walton & Buck, Asheville, N. C., on the brief), for appellants.

H. Kenneth Lee, Asheville, N. C. (Elliott Adams, Jacksonville, Fla., on the brief), for appellee.

Before SOBELOFF, Chief Judge, HAYNSWORTH, Circuit Judge, and BARKSDALE, District Judge.

BARKSDALE, District Judge.

This diversity action was instituted by Sherwood H. Smith, Jr., of Jacksonville, Fla., against Mr. and Mrs. Harry E.

Later in the day, Thomas Ferguson, Miss Hargrave, and plaintiff, started for the lake in the Fergusons' Chevrolet pick-up truck, towing the Fergusons' inboard motor boat on their trailer, their purpose being to launch and make use of the boat upon their arrival at the lake. This trailer was specially designed for the transportation of a boat, and was attached to the rear of the pick-up truck by a ball and socket trailer hitch. The boat was about seventeen and a half feet long, and with its motor weighed 1,800 pounds, and the trailer weighed 400 pounds, an aggregate of 2,200 pounds. The trip to the lake was without incident, and on their arrival, about 5:00 P.M., the young people undertook to launch the boat. The boat was customarily kept at the Ferguson home at Sylva, taken to the lake and launched whenever it was needed. The Fergusons frequently visited their cabin at the lake, and Thomas Ferguson was entirely familiar with the procedure of launching the boat. Plaintiff had never before taken any part in the launching of the boat, nor had he ever even seen it launched. In order to launch the boat, Thomas Ferguson drove the pick-up truck off the highway, turned it around, and backed the trailer into the lake, his purpose being to float the boat from the trailer. He had launched the boat in this manner on many other occasions. However, on this occasion, when he had backed the truck until its rear wheels were at the water's edge, the trailer had not reached water deep enough to float the boat. So the trailer was disconnected from the truck by Thomas Ferguson, and he and the plaintiff undertook to push the trailer further into the lake. They did not succeed in pushing the trailer into water deep enough to float the boat, but their efforts did increase the distance between the truck and the trailer to approximately eight or nine feet, so that the trailer could not be again attached to the rear of the truck by the ball and socket hitch which had been used in towing it to the lake. Thereupon, Thomas Ferguson took from the truck a woven wire cable, three-sixteenths of an inch in diameter, consisting of seven strands, with hook and chain at each end, and attached one end to the rear of the truck and the other end to the front hitch of the trailer. Thomas Ferguson then undertook to pull the trailer out of the lake by driving the truck forward, his purpose being to move the boat to another part of the lake where there was water deep enough to float the boat close to the shore. At the direction of Thomas Ferguson, plaintiff endeavored to assist by pushing the truck from the rear, but after several trials, they were unable to pull the trailer out of the lake. Then Thomas Ferguson showed Miss Hargrave how to drive the truck and directed her to drive forward while both he and plaintiff pushed, but this procedure also proved unsuccessful, the rear wheels of the truck by that time having become embedded in sand. Thereupon, Thomas Ferguson directed plaintiff to push the truck from the right rear, saying that he would rock the truck back and forth quickly and violently, hoping to free the rear wheels of the truck from the sand and pull the trailer from the lake. Miss Hargrave remained in the truck cab with Thomas Ferguson, who proceeded to rock the truck forward and backward while defendant pushed the truck from the right rear. After several efforts, none of which achieved sufficient forward movement to draw the cable taut, the wheels continuing to spin in the sand, suddenly the wheels caught and the truck shot forward violently. Plaintiff turned aside to watch the trailer come out of the water, and just as he turned sideways, he felt a sharp blow on his right ankle as if he had been struck with an axe or a baseball bat, and as he fell he saw that his right leg had been completely severed at approximately the ankle. Although plaintiff did not see what struck him, it was found that the sudden lurch forward of the truck had snapped the cable, and one end of it struck plaintiff's right leg with such force as to sever it, guillotine fashion.

Thomas Ferguson had found this cable in the mountains near his home at the scene of an airplane wreck, carried it home, and had used it previously on a number of occasions for pulling the boat and trailer out of the lake. However, the evidence does not disclose that he had ever subjected it to such a strain as would result from a sudden jerk, which would inevitably ensue when it became necessary to rock the truck to obtain sufficient traction to free it after being stuck in the sand. The district judge found as a fact that the cable was old, worn and rusty, and of insufficient tensile strength to withstand the strain to which it was subjected. The cable, having been introduced in evidence, was examined by the district judge, and we also have examined it. We cannot say that the district judge's findings as to the cable are "clearly erroneous" even though there was no expert testimony as to the tensile strength of the cable.

Following plaintiff's injury, a tourniquet was applied to his leg, he was taken to civilian hospitals where he remained about a week, and was thereafter moved to the Naval hospital in Philadelphia, from which he was discharged on convalescent leave on February 9, 1957. While in these hospitals, plaintiff was required to undergo surgery, has undergone protracted pain and suffering, has been medically retired from the Navy, and of course, his injury is permanent. The assessment of his damages was entirely reasonable and defendants do not complain of the amount.

Appellants contend here that there was no proof of actionable negligence on their part, and that even if their negligence was proved, the evidence required a finding of contributory negligence on the part of the plaintiff. However, the district judge concluded that defendants owed the plaintiff the duty of exercising that care under all the circumstances which a prudent man would exercise, and that since defendants knew the weight of the boat and trailer, the length of time the cable had been used, should have been aware of its weakness and

that it was not suitable for the purpose for which it was being used at the time of the injury to plaintiff, and failed to warn plaintiff, they were guilty of a breach of duty to the plaintiff which constituted actionable negligence. The district court further concluded that the plaintiff was free from contributory negligence.

At the time of the injury, plaintiff was not a social guest or visitor in defendants' home, and thus a bare licensee under North Carolina law. Consequently, the case of Murrell v. Handley, 245 N.C. 559, 96 S.E.2d 717, cited and relied on by appellants, is not in point here. There, the plaintiff, a social guest, slipped on a rug placed on a recently waxed floor and injured herself, and the court held that defendants were guilty of no breach of duty owed to her. But here, the plaintiff, at the time of the injury, was not in defendants' home, but had traveled to the scene of the accident as a guest passenger in defendants' automobile, and at the time of his injury was engaged in assisting in the movement of the automobile.

■ If, at the time of his injury, plaintiff occupied the status of a guest passenger in defendants' automobile, defendants owed him the duty of exercising ordinary and reasonable care under North Carolina law, which, of course, governs here, Spivey v. Newman, 232 N.C. 281, 59 S.E.2d 844, 846. There, plaintiff, at the invitation of the defendant, was getting into defendant's automobile, and was in the act of getting seated when defendant started her automobile off with a violent jerk before plaintiff had closed the door, which movement caused the still opened door to slam against plaintiff's head. The court said:

"The driver of a motor vehicle is not an insurer of the safety of a person riding therein as an invited guest. But he is required by law to exercise reasonable care to protect such person from harm. Accordingly, he is liable for an injury to a guest proximately resulting from his

negligence in the operation of the automobile. Wright v. Wright, 229 N.C. 503, 50 S.E.2d 540; Henderson v. Powell, 221 N.C. 239, 19 S.E.2d 876; Montgomery v. Blades, 218 N. C. 680, 12 S.E.2d 217; White v. Mc-Cabe, 208 N.C. 301, 180 S.E. 704; Ballinger v. Thomas, 195 N.C. 517, 142 S.E. 761."

A judgment for the plaintiff was affirmed.

If plaintiff did not occupy the status of a guest passenger at the time of the injury, he was engaged in assisting defendant Thomas Ferguson in the effort to launch defendants' boat: at the moment, assisting in pulling the boat out of the lake to move it to a more advantageous location. Of course, there was no contractual relation between plaintiff and Thomas Ferguson, but such a relationship was not necessary in order to impose upon Thomas Ferguson the duty of exercising ordinary and reasonable care for plaintiff's safety.

Defendant, Thomas Ferguson, was thoroughly familiar with the procedures necessary for launching the boat and the instrumentalities being used. On the contrary, plaintiff knew nothing of the procedures or instrumentalities and was acting gratuitously under specific directions of Thomas Ferguson. He was given no warning whatever of danger.

In Stroud v. Southern Oil Transportation Co., 215 N.C. 726, 3 S.E.2d 297, 299, 122 A.L.R. 1018, plaintiff, a service station employee, while engaged in inflating the tire of a customer, was injured by reason of a defect in the rim of the tire, and a judgment in his favor against the owner of the automobile was sustained. The court said:

"It is, of course, not necessary that a duty, the violation of which may constitute actionable negligence, should arise out of any contractual relation between the parties. There are other relations and situations or circumstances attending the occurrence or transaction connected with the injury which may give rise to such a duty. The defendant owed to this plaintiff the duty of refraining from subjecting him without warning to danger from a condition which was known to it, or could have been known by the exercise of due care, and 'there is a general duty owing to others of not injuring them by any agency set in operation by one's act or omission'. 45 C.M., p. 645; Cashwell v. [Fayetteville Pepsi-Cola] Bottling Works, 174 N.C. 324, 93 S.E. 901. The latter case quotes, with approval, Heaven v. Pender (1882–'83), 11 L.R., p. 503: 'Whenever one person is, by circumstances, placed in such a position towards another that every one of ordinary sense who did think would at once recognize that if he did not use ordinary care and skill in his own conduct, with regard to those circumstances, he would cause danger of injury to the person or property of the other, a duty arises to use ordinary care and skill to avoid such danger.' Lisle v. Anderson, 61 Okl. 68, 71, 159 P. 278, L.R.A.1917A, 128."

It seems unnecessary to delve into the question of whether, at the time of his injury, plaintiff occupied the status of a guest passenger in defendants' automobile, or whether at that time, at the request and under the direction of Thomas Ferguson, plaintiff was assisting in the effort to launch the boat, because, in either event, defendants owed him the duty of exercising ordinary and reasonable care for his safety. We hold that the evidence was sufficient to justify the district court's conclusion that defendants were negligent and that their negligence was the proximate cause of the plaintiff's injury.

As to contributory negligence, although there was some slight conflict in the evidence as to precisely how plaintiff sustained his injury, these conflicts were resolved in favor of the plaintiff, and at most, the question of contributory negligence would have been for the

jury had there been a jury. The district judge sitting without a jury was thoroughly justified in resolving this issue against the defendants.

"The pleas of assumption of risk and contributory negligence are both affirmative and require a showing on the part of the defendant to be considered at all; and to prevail as a matter of law, either must (so) plainly appear from the evidence that a reasonable mind could draw no other inference.

"As we have stated, assumption of risk and contributory negligence are affirmative pleas and ordinarily must be left to the jury. We find no evidence in support of either plea that would justify the court in taking it from the jury." Bruce v. O'Neal Flying Service, 231 N.C. 181, 56 S.E.2d 560, 564, 12 A.L.R.2d 647.

From the foregoing, it follows that the judgment of the district court is

Affirmed.