Benjamin L. Bird, Administrator of the Estate of Mildred L. Bird, Deceased, Appellant, v. Albert E. M. Louer, Appellee.

Gen. No. 36,587.

filed December 11, 1933.

ASHCRAFT & ASHCRAFT, for appellant; RUSSELL F. LOCKE, of counsel.

McKENNA, HARRIS & SCHNEIDER, for appellee; JAMES J. McKENNA and ROBERT B. LYNCH, of counsel.

MR. PRESIDING JUSTICE MATCHETT delivered the opinion of the court.

In an action on the case, upon trial by the court without a jury, there was a finding for defendant and judg-

ment thereon which plaintiff as administrator seeks to reverse by this appeal.

The amended declaration was in eight counts, plaintiff relying, however, upon only the first and the fifth. The first averred in substance that defendant was the owner of and he and his agents, servants and employees operated and used a certain aeroplane in carrying passengers from one airport or landing field into the air and returning to the airport or landing field and in carrying passengers from one airport or landing field to another, and divers other places, and that being such owner of the aeroplane he (defendant) and his agents, servants and employees on September 24, 1929, at a certain airport known and described as Sky Harbor, located at or near the intersection of Dundee road and Pfingsten road in Cook county, Illinois, invited Mrs. Bird, decedent, into said aeroplane as a passenger to be safely conveyed thereby from Sky Harbor and return thereto, and defendant, his agents, etc., conducted themselves so carelessly, negligently and unskilfully that while the aeroplane was conveying Mrs. Bird and while she was in the exercise of due care and caution for her own safety and before the arrival of the aeroplane at Sky Harbor, the same collided with another aeroplane and was forced, thrown or drawn to the ground, whereby Mrs. Bird was thrown with great force and violence upon the ground, and was then and there killed.

The fifth count averred the same general facts as the first: that defendant through his agents, servants and employees on September 24, 1929, invited Mrs. Bird into the said aeroplane as a passenger to be safely conveyed thereby on a journey from Sky Harbor and return, in consideration of a certain sum of money paid by her; that by reason thereof defendant and his agents, etc., ought carefully to have conveyed her, but not regarding their duty in that behalf so carelessly, negligently and unskilfully conducted them-

selves that the aeroplane while conveying deceased and while she was in the exercise of due care and caution, collided with another aeroplane and was forced, thrown or drawn to the ground; that Mrs. Bird was then and there thrown with great force and violence to and upon the ground and was thereby killed.

Defendant filed a plea of the general issue and a special plea denying ownership and operation of the aeroplane.

The facts in the case were presented to the court by stipulation, from which and from statements made by the attorneys for the parties upon the trial, it appears as follows:

On September 24, 1929, Mildred Bird, deceased, was the wife of the plaintiff administrator, and she died on that date as the direct and immediate result of the collision between two aeroplanes, in one of which she was then riding. Mildred Bird at the time of her decease left her surviving her husband (plaintiff) and a daughter six years of age. Louer, defendant, was the owner of the aeroplane in which deceased was being carried at the time of the collision, and he was her brother. In make and design defendant's aeroplane was known as a Stearman, No. 8826. It was licensed by the United States Government to be flown by a duly authorized pilot. At the time of the collision this aeroplane was in the charge of Walter Meyer, who was a pilot duly authorized by the United States Government; he had a reputation for extraordinary skill as an aeroplane pilot and had about 3,600 flying hours of experience; he had flown a great number of aeroplanes of various designs, and he was flying defendant's aeroplane at the time it left the ground and before the occurrence of the accident.

Mr. Meyer had given defendant instructions in flying. Meyer was a careful pilot and on this day was absolutely sober and had not been drinking. Meyer owned at least two planes of his own and employed at

least two mechanics in his business. He maintained an air field where he sold gasoline and made repairs on aeroplanes. Defendant's plane had been repaired in Meyer's flying field by mechanics employed by Meyer, and the bill had been rendered by Meyer to defendant for these repairs. Meyer taught students to fly and charged for his services at the rate of $10 an hour if the student's plane was used and $30 an hour if Meyer's planes were used. Mr. Meyer also rented out other planes which he kept on his air field. His sole occupation was aeroplane work, as pilot, instructor, salesman, mechanic, or whatever is usual in such occupation.

Defendant Louer had an arrangement with Meyer that he should have the first call upon Meyer's services unless Meyer was engaged in doing something else at the time. In that case Meyer would not be available to defendant until he had finished the particular matter upon which he was at that time engaged. If Meyer was not otherwise engaged defendant had him and his services whenever he (defendant) wished. Meyer charged Louer $10 an hour for flying his plane and flew it to whatever destination he was told to fly it.

Mr. Bird, complainant, had an understanding with his brother-in-law, Louer, that he could have the use of the plane whenever Louer was not using it, provided that Meyer was available to fly the plane. It had been the usual practice for Louer to pay Meyer whenever he took either Louer or Bird up in the plane, and Bird thereafter reimbursed Louer for the use of the plane in such amounts as represented the expense Louer was put to through Bird's use of the plane.

Whenever Louer wanted to go on a trip he would reach Meyer by telephone and if Meyer was not occupied he would accompany Louer as his pilot. On these trips Meyer would use his own discretion as to how to fly or manage the plane, although Louer would tell him where he should go and Louer was under no obligation

whatsoever to make use of Meyer's services, except as he, Louer, might choose so to do.

On the date of the accident the Stearman plane was in good working order, in that all the elements and parts of the ship which controlled the operation and movement of the plane and the mechanical appliances were all in proper working order. The day on which the accident occurred was a clear, warm day with very little wind, and at the time of the accident, which was approximately six o'clock in the afternoon, good weather conditions prevailed; there was nothing in the air conditions to obstruct the visibility of aeroplane pilots.

On that day Mr. Bird called defendant's office and was informed that defendant would not be in until it was time for Mr. Bird to take the train for the airport. Mr. Bird, a Mr. Page Tiboudeaux, Major John Schroeder and a Mr. Russell Locke, then left Bird's office by train for Highland Park, where they met Mrs. Bird and all motored from there to Sky Harbor. Louer therefore did not know his plane was being used this day until after the accident. In the meantime Bird had telephoned to Meyer and asked him to come to Sky Harbor to fly Louer's plane and to give Bird a flying lesson. Major Schroeder was a friend of the parties and had assisted defendant Louer in the purchase of the aeroplane. On previous occasions Louer had invited Major Schroeder to ride in the plane, but Schroeder had never done so.

The aeroplane had accommodations for a pilot and two passengers; it had a front and a rear cockpit; it is termed an "open ship" and could be operated from either cockpit. When the plane left the ground at Sky Harbor there was a joy stick in each cockpit. Mr. Meyer and Mrs. Bird occupied the front cockpit and Major Schroeder occupied the rear cockpit.

It had been determined before the arrival of Meyer at Sky Harbor that Major Schroeder and Mr. Bird

would be taken to Maywood and that after landing Major Schroeder at Maywood, Meyer would give Mr. Bird a lesson in flying on the way back, but at the last moment Mrs. Bird decided that she would like to take the ride, so she went over instead of Mr. Bird.

The plane was taken off the field by Meyer, who was flying it from the front cockpit.

The joy stick controls the direction of flight or the maneuvering of the aeroplane, except for the rudder bar. The joy stick controls the ailerons. When the joy stick is moved to the left, the right-hand aileron is tipped downward and the left aileron tips up so that the plane is made to turn on its axis to the left and conversely; when the joy stick is pulled or turned to the right, the opposite action is effected. In order to make the ship go up or down, the joy stick is pulled backward or pushed forward by the pilot. The direction of the plane is controlled by a rudder which controls the horizontal circle in which the plane moves when the wings are horizontal with the ground. This rudder is moved by a rudder bar which is operated by the feet of the pilot, and the rudder is turned much as in an ordinary sailing ship in order to turn the plane to right or to left. If the ship, instead of flying level, is put in a vertical angle, so that instead of the wings being horizontal with the ground they are in a vertical position with the ground, then the rudder would not have any effect toward turning the ship to the right or to the left, since the rudder would then move up or down and not from side to side.

The journey in the plane from Sky Harbor to Maywood was made by the parties in about 15 minutes. Major Schroeder then got out of the plane. Meyer got into the rear cockpit and immediately took off in the direction of Sky Harbor with Mrs. Bird sitting in the front cockpit. Within 15 minutes thereafter the ship approached Sky Harbor from the south and

traveled toward the landing field at Sky Harbor, flying in a northwesterly direction.

When the aeroplane reached a point about a mile south and a little to the east of Sky Harbor and in a position between 600 and 1,000 feet above the ground, it collided with another aeroplane, which struck defendant's aeroplane on its right side. This second plane was described as a Standard, and at the time of the collision was operated by a person who was not a licensed pilot.

Mrs. Bird was not a pilot and had never taken lessons in flying so far as was known to the parties; she had, however, frequently ridden in aeroplanes and was well aware that she could not operate an aeroplane and that it would be dangerous for her to attempt to do so.

Just before the collision, while Louer's plane was flying north, the Standard was flying south. The Standard had risen from the ground and circled the field of Sky Harbor after the takeoff and then had headed south. It was well known around the airport at Sky Harbor that the pilot of the Standard was inefficient; for instance, in making a turn he would just kick the rudder and not use the ailerons, causing the plane to turn but also to skid; he had also been seen frequently to violate the Department of Commerce rules by stunting too close to the ground.

The Stearman plane was in good condition, and at the time it took off from the airport in charge of Meyer, he was perfectly sober, in good condition and an efficient pilot. There was no record that he had been accustomed to violate the rules as to stunting and like things.

At the time of the accident the wind velocity was about 25 miles an hour running due west or northwest. The Louer plane was visible to the pilot of the Standard, who apparently seemed to make a turn to avoid the collision but made a flat turn so that his plane

skidded and the right wing hit the right wing of the Louer plane. The Louer plane was moving up in accordance with regulations to make a left turn and make a straight landing therefrom. Meyer knew the regulations as to left-hand turns in making a landing at Sky Harbor, and it is stipulated that at the time of the accident he was obeying Sky Harbor regulations.

The visibility in the Stearman plane is better than in most planes, probably as good as any, but there is a blind spot directly ahead so that when the aeroplane is in normal flight the pilot cannot see directly ahead and cannot see a plane which is close in front of him, if it is exactly at the same altitude as his plane. The plane could, however, be maneuvered to give visibility in any direction.

The Standard plane was not airworthy. The Louer plane when examined after the accident was found to be in good condition so far as the material comprising it was concerned. Just before the accident the Louer plane was traveling about 90 miles an hour and the Standard about 40 miles an hour.

There is no claim that defendant was engaged in the business of carrying passengers by aeroplane. The flying field which Meyer managed was a few miles from the scene of the accident. In his business there Meyer used letterheads with the words, ''Meyer Air Transport'' printed on them. Meyer's price for flying Louer's plane was $10 an hour, and he charged the same sum for flying the plane of any other person. Defendant was a student pilot, but he gave no orders or direction to Meyer as to the management of the plane. As a matter of fact, Mr. Bird invited Major Schroeder to take the ride in the plane. Mr. Bird had previously taken lessons from Meyer and was warming up the plane when Meyer arrived at the airport. Meyer was late in arriving at the airport. Major Schroeder had an engagement for dinner at Maywood,

and the plans of the parties were arranged with reference to this.

It was stipulated that it was not known who was operating the Louer aeroplane at the moment of impact, as all of the parties in the collision died without making any statement. The two aeroplanes were apparently on a level at the time of the collision. They would have missed each other at any reasonable distance above or below. Defendant was sued as a matter of fact because the pilot of the other plane was not supposed to be financially responsible. The driver of this other plane was Charles L. Kron, who was also killed in the accident. Mr. Kron was not a licensed pilot; he did not have even a student's license; he had been frequently seen operating a Standard plane and impressed observers as being inefficient, and in making a turn he was apparently unaware that anything should be used save a rudder. One person alone, it was stipulated, had seen Kron at least 50 times flying in his inefficient and unskilful manner. Kron had also been seen frequently violating Department of Commerce rules by stunting too close to the ground. The Standard plane had been used for carrying passengers, and complaint had been made to the Department of Commerce. Apparently, whoever was operating the Louer plane was obeying Sky Harbor regulations. The Standard plane was old and somewhat rotted, so that a nail file could be dug into it. It is stipulated that the Standard plane should have been condemned. There was no evidence as to whether the planes came in contact with any air pockets.

It is contended in behalf of plaintiff that the relationship of principal and agent or master and servant existed between Meyer and defendant with reference to the operation of defendant's aeroplane at the time of the collision, and that the rule of *respondeat superior* is therefore applicable; that the deceased was a passenger on this aeroplane, and that defendant

therefore owed to her the duty of exercising reasonable care to the end that she might not be injured, and this whether she is considered a passenger for hire or a passenger by invitation. It is further contended that Meyer as a servant of defendant did not exercise such care and that defendant is therefore liable to pay a fair and just compensation to the next of kin of the deceased in light of the pecuniary injuries suffered. On the other hand it is contended by defendant that Meyer was not the agent or servant of defendant at the time of the collision; that the deceased at any rate was not a passenger for hire; that there is no proof that the heirs were in the exercise of due care for the safety of the deceased at the time of the accident, and further, that there is an entire absence of proof that the deceased was in the exercise of due care for her own safety at the time of the collision.

Several of these points are of controlling importance. If Meyer when flying the aeroplane was not the agent or servant of defendant, but, on the contrary, as defendant contends, the agent and servant of Bird, then the rule of *respondeat superior* would not be applicable and defendant as a matter of law would not be liable. Plaintiff contends that Meyer was the agent and servant of defendant and cites, with other cases, *Meyer v. Industrial Commission,* 347 Ill. 172, where in a proceeding brought by Mrs. Meyer, under the Compensation Act, growing out of this same accident, it was held by our Supreme Court that defendant was engaged in a "business or enterprise" within the meaning of section 4 of the Compensation Act, Cahill's St. ch. 48, ¶ 204; that Meyer was an employee of defendant, who at the time of the accident was acting within the scope of his employment within the meaning of section 5 of the Compensation Act; that Meyer was not an independent contractor and was the servant of defendant Louer at the time of the accident.

Defendant says that the opinion correctly stated the law upon the facts there appearing in the record, but that it is apparent the Supreme Court was not informed that Bird in reality paid the charges of Meyer for piloting the plane, in that he reimbursed defendant for whatever expenses were incurred in its operation; also, that the Supreme Court was not informed that Meyer had mechanics of his own working for him and that he did business under the name, "Meyer Air Transport," or that Meyer sold gasoline at his air field, or that Meyer owned other aeroplanes which he rented, or that Bird had exercised dominion over the plane upon the day of the accident which was unauthorized, namely, in the loaning of it to Major Schroeder, with Mrs. Bird as a guest.

The case there was not between the present parties and therefore it cannot be said in this proceeding that this question of relationship between Meyer and defendant Louer has been adjudicated. Nevertheless, the opinion is not without weight in the determination of that question.

The inference here from all the facts, briefly stated, is that defendant loaned his aeroplane to Bird upon the condition that it should at all times be flown by his pilot Meyer. Where a master temporarily loans or hires his servant to another for some special service, and the servant is placed wholly subject to the person to whom he is loaned or hired and wholly freed from the control and direction of his general master, he may for the time being become the servant and agent of the person to whom he is loaned or hired. This rule was stated in *Densby v. Bartlett,* 318 Ill. 616, where, however, it was held after a review of many authorities that a party who hired an automobile and driver of the same for the use of his customers in a real estate business, was not responsible for the negligence of the driver, although the hirer had the right to direct the driver of the automobile when and where he was

to go. That decision seems to hold that the right to discharge is essential to the relationship of master and servant. The contract there with reference to the automobile and its driver seems not unlike the contract between Louer and Bird with reference to the aeroplane and its pilot. Certainly, Bird under the arrangement did not have either the power or the right to discharge Meyer. Indeed, one condition of the loan or hiring of the aeroplane was that it must be piloted by Meyer alone. We therefore hold that Meyer was the agent and servant of defendant Louer and that the rule of *respondeat superior* is applicable to the facts of this case.

It is also contended by defendant that plaintiff failed to prove that the deceased was in the exercise of due care for her own safety at the time of the accident. *Newell v. Cleveland, C., C. & St. L. Ry. Co.*, 261 Ill. 505, and many similar cases are cited. All the persons in both aeroplanes which collided were killed at the time of the collision; hence, there were no eyewitnesses to the accident. No proof was offered as to the habits of care, etc., on the part of the deceased.

Whether the general rule stated in the above and other cases as to the necessity that a plaintiff prove freedom from contributory negligence is applicable to an action growing out of a collision of aeroplanes far above the surface of the earth, it is not necessary for us to decide in view of the fact that we have come to the conclusion that there was no negligence on the part of Meyer which would permit plaintiff to recover. However, if we assume that this rule of law as to accidents which happen upon the land is also applicable to accidents which happen in the air under circumstances such as here appear, it would seem that proof of the hiring of a duly licensed pilot skilled and experienced, the placing of him in charge of the aeroplane before the deceased became a passenger, and further, the performing of great care in making sure that the aero-

plane was in perfect running order and in good condition, should be prima facie sufficient to establish the fact that the deceased and her husband were in the exercise of due care for her safety. We assume, of course, that the six-year-old child would prima facie be without negligence in the matter.

The controlling question for our consideration therefore is whether defendant or his pilot Meyer could under the evidence reasonably be said to be guilty of negligence proximately tending to cause the collision. The trial court has found for defendant on this issue, and that finding of the trial court is entitled to the same weight as the verdict of a jury. The ultimate question for our determination therefore is whether that finding of the court is clearly and manifestly against the weight of the evidence.

Defendant argues that the allegation of the declaration that the deceased was invited to ride as a passenger was not proved and says that as a matter of fact the proof shows that defendant did not know that Mrs. Bird was to become a passenger. If, however, we are right in holding that Meyer was the agent and representative of defendant, this contention is without merit, for Meyer knew of the invitation to Mrs. Bird, which was either express or implied, and his knowledge would also be the knowledge of defendant. It is also argued that there is no proof that Mrs. Bird was conveyed as a passenger for a consideration as the declaration alleges. The evidence, however, indicates that she was not carried in the plane gratuitously, although the proof comes far short, we think, of proving that defendant was a common carrier. *McCusker v. Curtiss Wright Flying Service, Inc.*, 269 Ill. App. 502. However, whether she was a mere invitee or passenger for hire, we hold the servants of defendant were obligated to use reasonable care to the end that she might not be injured. Indeed, that would probably be the proper rule even if she were being carried gratuitously

on a trip for pleasure. That is the rule applicable to conveyance by automobile. We see no reason why the rule should not be reasonably held applicable in case of transportation by aeroplane. *Hibernian Banking Ass'n v. True,* 228 Ill. App. 194; *Collins v. McMullin,* 225 Ill. App. 430.

Plaintiff has argued quite at length that the uncontradicted evidence shows that Meyer was negligent; and he bases this argument upon the fact that Meyer was an experienced aeroplane pilot who presumably knew all the dangers and consequential needs of flying; that he had taught students to fly and he was flying an aeroplane of the very latest design which was in good working order, and that all the forces of nature were giving him assistance by offering a clear, warm day with perfect visibility; that he was flying an aeroplane which would, as he knew, with proper manipulation of the controls at his command, give him a clear, unobstructed and correct view of the ground and the space above the ground as far as his eyesight could detect; that he was able, at the time of approaching Sky Harbor, to see not only the airport with its markings indicating the proper place to land, but also to see any other aeroplanes that might have been in the air, either near him or at any considerable distance from him; that he knew that this airport was a public airport and that it was a place where other aeroplanes would surely be found, either on the ground, leaving the ground, flying in the air around the airport or preparing to land; that he knew or should have known, that at the time he was approaching Sky Harbor preparatory to landing it was not only possible but quite likely that other aeroplanes were being flown at or near Sky Harbor; that he knew too the construction of an aeroplane and knew, or should have known, that a collision between the aeroplane he was flying and another aeroplane at a height of 600 to 1,000 feet would inevitably cause both aeroplanes to fall to the ground

and result in the death of the passengers; that he knew his plane was maneuverable and knew that he could have controlled the direction of flight of his plane at will; that he could cause the plane as he approached Sky Harbor to raise or descend, to turn to the left or to the right at almost any angle he chose; that he had almost an unlimited area in which to maneuver his plane approaching Sky Harbor, at his will; that he was flying a plane that had a speed greater than that of any other plane in the air at the time of the accident, and, according to the record, much greater than the plane with which his plane collided. Plaintiff says that notwithstanding all these facts Meyer permitted the plane he was flying to collide with the other plane and thereby caused the death of Mrs. Bird. Plaintiff says that if Meyer had looked he would have seen the aeroplane with which he collided; that if it had been miles away he could have instantly determined whether or not the other aeroplane was approaching Meyer's plane; that he could have at any time for a period of minutes, rather than seconds, before the accident, changed his line of flight so that it would have been impossible for the other aeroplane to have approached him, much less to have collided with his plane.

Quite obviously, then, plaintiff argues, one of two things happened: Meyer saw the other plane and deliberately, wilfully and wantonly caused his plane to collide with the second one, or Meyer failed to look, because if he had looked he would have seen the other plane, and plaintiff says, ''This we charge to be the most unreasonable lack of care conceivable.'' Plaintiff says that it would have been an unreasonable lack of care for a novice to have flown an aeroplane, which he knew traveled 90 miles an hour or more, through space where other objects were moving, without taking special precautions to see what obstruction there might be in his line of flight; and therefore it is said, ''Meyer's lack of care is directly commensurate with

the great experience the record shows he had and his consequential knowledge of the attending dangers. That Meyer failed to look and so was responsible for the accident does not discharge his liability where there was nothing to obstruct his vision. There being nothing to obstruct his vision, it was negligence for him not to see a danger which was as clearly visible as the aeroplane with which he collided.'' Plaintiff cites *Koenig v. Semrau,* 197 Ill. App. 624.

On the other hand, defendant argues that the proof fails to show that Meyer was in fact piloting the plane at the moment of the accident and points out that the stipulation says that the pilot was unknown and therefore it may not be argued that it was Meyer, and not Mrs. Bird, who was piloting the plane. We are inclined to the view that the presumption is that Meyer was piloting, and assuming this to be true, we are unable to find the evidence in the record from which negligence may justly be inferred. As defendant suggests, the planes may have come into an air pocket or may have experienced sudden gusts of wind. There may have arisen some defect in the motor. We can hardly indulge the presumption that because Meyer was extraordinarily capable he therefore must have been entirely negligent. In the absence of direct evidence the presumption is otherwise because of the conceded facts of Meyer's skilfulness, his careful habits, etc. The just inference is that these did not desert him at the precise moment the accident occurred, nor is there evidence from which an inference might be drawn that it was his desire to lose his own life as well as that of Mrs. Bird who was riding with him.

Further, we think Meyer was not (in the exercise of due care) obligated to know that the pilot of the Standard aeroplane, Kron, was unskilful; that he was an inefficient and unlicensed pilot. The stipulations are to the effect that the proper way to turn an aeroplane is to use both rudder and ailerons to bank the plane on

the turn. Apparently Kron was ignorant of this fact, but there is no stipulation to the effect that Meyer knew of Kron's ignorance and inefficiency. It is stipulated to the effect that the skidding of the Standard aeroplane was the cause of the accident and that the Standard aeroplane skidded because the pilot was inefficient, ignorant and careless. Indeed, under the facts as set forth in the stipulation we may not assume that Meyer was negligent in failing to see the Standard plane at about the time of the accident. The stipulation is to the effect that the visibility in the Louer plane was better than in most planes and probably as good as any, but that there was a blind spot directly ahead so that when the aeroplane was in normal flight the pilot could not see directly ahead and could not see a plane which was close in front of him if it was exactly at the same altitude as his plane. The stipulation is further to the effect that the two planes were on the same level when they collided. We conclude from the undisputed facts that the proximate and immediate cause of the collision in which Mrs. Bird lost her life was the negligence and inefficiency of the pilot of the Standard plane, and that there is no evidence from which an inference may be reasonably drawn that Meyer was negligent.

Plaintiff finally says that there is no precedent in the law for this court in its determination of the issues in this case; that no court of law has ever before had to state a rule that would serve as a precedent for present and future regulations of human affairs in the light of the circumstances involved in this case and the consequential needs of the people. The rules of law applicable to aviation, however, must be based upon the facts which appear in the record, and whether the action is based on an accident on land or on sea or in the air, we think the court may not hold a defendant liable without proof of some duty which has been neglected. Plaintiff's case is not based upon the theory

541

that the owner of an aeroplane is an insurer of the safety of passengers. His action is grounded upon alleged negligence which he assumed the burden of proving. We cannot say that the finding of the court in favor of defendant is clearly and manifestly against the evidence.

For that reason the judgment of the trial court is affirmed.

*Affirmed.*

O'Connor and McSurely, JJ., concur.