PAULINE MILLS, EXECUTRIX OF THE ESTATE OF ROBERT DAVIS MILLS, ALSO KNOWN AS R. D. MILLS, DECEASED, APPELLANT, v. LAVERNE L. BAUER, APPELLEE.

143 N. W. 2d 270

Filed June 10, 1966. No. 36151.

412

Martin, Davis, Mattoon & Matzke, for appellant.

Maupin, Dent, Kay & Satterfield, Clinton J. Gatz, Donald E. Girard, and Rady A. Johnson, for appellee.

Heard before CARTER, SPENCER, BOSLAUGH, BROWER, SMITH, and McCOWN, JJ., and BRODKEY, District Judge.

BROWER, J.

This action was brought by Pauline Mills, executrix of the estate of Robert Davis Mills, also known as R. D. Mills, deceased, plaintiff, against LaVerne L. Bauer, defendant, for damages for the wrongful death of said R. D. Mills.

The parties will be designated as they were in district court and the decedent R. D. Mills as the decedent or Mills.

The decedent Mills died as a result of an automobile collision at approximately 2:15 p.m., on May 8, 1962. Plaintiff brings the action as his executrix on behalf of Pauline Mills, the decedent's widow.

Plaintiff's decedent was driving his 1958 Ford 4-door sedan automobile northward on a north-south county graveled road. Defendant was driving a 1962 Chevrolet 4-door sedan in a westerly direction on an east-west county graveled road. Neither road was favored over the other and there were no stop signs at their intersection. The collision between the two vehicles occurred at the intersection of the two roadways at a point 9.2 miles east and 5.6 miles north of Sidney in Cheyenne County, Nebraska. Mills died instantly. Defendant was rendered unconscious for several days and has no recollection of the events. Both drivers were alone. There were only the two vehicles involved and no other eyewitnesses. Decedent's automobile as equipped weighed 3,652 pounds, and was 207 inches long and 78 inches wide. Decedent weighed 189 pounds. De-

fendant's car as equipped weighed 3,585 pounds, and was 209.6 inches long and 79 inches wide. Defendant, himself, weighed 200 pounds.

A state trooper, who had been called, arrived at the scene some 30 minutes after the accident. He checked over those injured and, after taking care of them, at approximately 2:55 p.m., he took pictures and measurements at the intersection. The photographs as then taken show several other cars had arrived at the scene and were parked on the highway at the time.

The north-south road was 22 feet wide and the east-west road 18 feet 10 inches in width. Both roads were straight, level at the immediate scene, dry, and with graveled surfaces. There was a hill 0.4 of a mile south of the intersection and another 0.8 of a mile east of it. The day was clear and the sun was shining, but a southeast wind was blowing. There were no obstructions on the southeast corner of the intersection. A driver coming from the east had an unobstructed view for 0.8 of a mile and the view of the one proceeding from the south was unobstructed for 0.4 of a mile.

The trooper testified there were two sets of tire marks leading into the intersection and that one of these extended to the east a little way beyond the east edge of the intersection and the other back to the edge of the intersection on the south. Both were tire marks and not skid marks. The right-hand wheels of the decedent's northbound auto were approximately in the middle of the road. The tire marks of defendant's westbound car appeared to straddle the center of the road. The two sets of tire marks met in the intersection. The trooper placed a red flag in the intersection as near as he could determine at the point where the tire marks met. The flag thus placed was 24 feet from the northeast corner, 28 feet from the southeast corner, 29 feet from the northwest corner, and 27 feet from the southwest corner of the intersection. The flag was placed just a little west of decedent's right tire mark and south

of defendant's left tire mark. From an area near the flag, slide marks went off to the northwest. One set indicated that something had skidded and had gone through the ditch on up into the field. Another set also had gone into the field. Both cars were located in the field. The Mills vehicle had overturned. It had come to rest after the impact on its left side, facing southeast in the plowed field. It was 53.8 feet northwest of the flag. The defendant's car was in the field also but closer to the east-west ditch than the other. It remained on its wheels facing westerly. It was 44 feet from the flag.

Several photographs of both vehicles are in evidence. The front of defendant's car was damaged. The most severe damages occurred to its left front. There were, however, some marks on its left side where the metal was bent. The front two-thirds of the Mills car on its right side was badly damaged with the most severe damage occurring in the area of the door post on the right-hand side. The frame and body were bent in a "V" shape at the door post.

A witness was working in a field about ½ mile northwest from the intersection. The wind was coming from the southeast. He heard an unusual noise, but it was not a loud noise.

There was a windbreak of considerable width north of the intersection on the east side of the road. The trooper testified he had driven south on the north-south road and could see to the east around the windbreak at a point 0.4 of a mile to the north. He had not driven from the east to observe from what point one could look around it. There is also testimony that a portion of the windbreak came within 160 feet of the east-west road. The photographs show the windbreak from the intersection, but the distance to it cannot be estimated with any accuracy therefrom, although it appears much closer than 0.4 of a mile.

A trial was had in district court. At the close of plaintiff's evidence, the defendant made a motion to

direct a verdict for defendant or dismiss the plaintiff's petition, which was overruled. The same motion being renewed at the close of all the evidence was sustained by the trial court and plaintiff's action dismissed.

Plaintiff has appealed to this court from an order overruling her motion for a new trial. She assigns error to the trial court in dismissing plaintiff's action, overruling her motion for a new trial, and refusing to admit evidence of the volume of traffic normally upon the county road on which the deceased was driving.

Plaintiff alleged many acts of negligence on the part of the defendant. We consolidate and restate them as follows: Defendant failed to yield the right-of-way to decedent's vehicle at the intersection; drove his automobile at a high and dangerous rate of speed; failed to apply his brakes, slow his car, or turn to the right to avoid the accident; and failed to maintain a proper lookout.

Defendant denied his negligence and, claiming the right-of-way, alleged the decedent was guilty of contributory negligence more than slight in comparison with that of the defendant in practically the same respects as was alleged by the plaintiff against him.

"A motion for directed verdict or for judgment notwithstanding the verdict must be treated as an admission of the truth of all material and relevant evidence submitted on behalf of the party against whom the motion is directed. Such party is entitled to have every controverted fact resolved in his favor and to have the benefit of every inference that can reasonably be deduced from the evidence." Egenberger v. National Alfalfa Dehydrating & Milling Co., 164 Neb. 704, 83 N. W. 2d 523.

In the consideration of the present case certain rules set forth in the syllabi in Wolcott v. Drake, 162 Neb. 56, 75 N. W. 2d 107, will now be stated: "The burden of proving negligence is on the party alleging it.

"If defendant pleads that the plaintiff was guilty of contributory negligence, the burden is upon him to

prove that defense and this burden does not shift during the trial. However, if the evidence adduced by the plaintiff tends to prove that issue, the defendant is entitled to receive the benefit thereof.

"The negligence of a person charged with responsibility for an accident cannot be inferred from a presumption of due care on the part of a person killed in an accident. A presumption of due care in the performance of duty attends a person so charged as well as a person so killed.

"Negligence is not presumed; the mere happening of an accident does not prove negligence.

"The burden of proving a cause of action is not sustained by evidence from which negligence can only be surmised or conjectured."

In Wolstenholm v. Kaliff, 176 Neb. 358, 126 N. W. 2d 178, it was stated: "Negligence is a question of fact and may be proved by circumstantial evidence and physical facts. However the law requires that the facts and circumstances proved, together with the inferences that may properly be drawn therefrom, indicates with reasonable certainty the negligent act charged.

"The driver of an automobile entering an intersection of two highways is obligated to look for approaching automobiles and to see any vehicle within the radius which denotes the limit of danger.

"The operator of an automobile approaching or entering an intersection is required to see another automobile approaching or entering the intersection which has been favored with the right-of-way under the statutory rules of the road and a failure to see such favored automobile is negligence as a matter of law."

Under section 39-728, R. S. Supp., 1963, the defendant who approached the intersection from the right of the Mills automobile had the right-of-way unless the evidence is sufficient for it to be inferred that the decedent drove his vehicle into the intersection first, or that the action of the defendant forfeited the right-of-way.

Plaintiff contends the marks left upon the highway and the position and condition of the cars after the impact are sufficient to raise an inference that the decedent's automobile first entered the intersection. This the plaintiff attempts to show from these asserted premises. She argues that the point where the tire marks met as shown by the flag was in approximately the center of the intersection from north to south. She claims the vehicle of the decedent was struck by the front end of the defendant's car at about the door post since that is the point of the vehicle's greatest damage. She calls attention to the tire marks of the defendant's car which were outlined with a grease pencil by the trooper on the photographs. These marks so outlined indicate the defendant's right wheels were only 3 feet from the north edge of the road and when the width of defendant's car, 6 or 7 feet, are added it appears the defendant's left wheel which was damaged was at or close to the center of the east and west road. She argues from this that the decedent's vehicle was more than half way through the intersection and contends the defendant's car was not. The defendant points out, however, and the photographs show that the right front wheel and the whole front end of the decedent's vehicle was badly damaged also. This, he urges, indicates the initial impact of the two cars was between the extreme right front of the decedent's car and the left front of the defendant's car. Moreover, the right-hand tire marks of the Mills vehicle were about in the center of the north-south road near the flag. The road was 22 feet wide. It therefore is contended by the defendant that the front end of his car was 11 feet, or half way, into the intersection. Moreover, the trooper testified the defendant's automobile was straddling the center of the east-west road, which seems to conflict with the grease marks, and its width was 79 inches. Defendant therefore contends that half of this width should be subtracted from the distance the decedent's car had entered into the intersection, and

when this is done, he argues, it follows that the defendant's car and not the decedent's car had proceeded further into the intersection. It is apparent that the speed of each vehicle, which will hereafter be discussed, would have to be considered on the question of which entered the intersection first. The ultimate damage to an automobile which has been rolled over as a result of an accident is not always conducive to a proper determination of its original point of impact in the collision. Neither is a computation and comparison of the exact distance vehicles had traversed the intersection always decisive. This court in Costanzo v. Trustin Manuf. Corp., 176 Neb. 136, 125 N. W. 2d 556, in considering a similar problem, stated: "We realize that, under our decisions construing the right-of-way statute, section 39-728, R. R. S. 1943, the mathematical determination of who reaches an intersection first by a few feet should not be controlling. Gernandt v. Beckwith, supra (160 Neb. 719, 71 N. W. 2d 303); Long v. Whalen, supra (160 Neb. 813, 71 N. W. 2d 496)." We conclude the evidence in the present case does not establish which of the vehicles entered the intersection first.

The plaintiff claims the evidence is sufficient to raise an inference that the defendant's automobile was being operated at unreasonable speed under the circumstances. She urges the defendant thereby forfeited any right-of-way which he might otherwise have had under section 39-751, R. S. Supp., 1963. She bases her argument on four propositions which are asserted to raise the inference. She calls attention to the fact that the decedent's vehicle weighed some 50 pounds less than that of the defendant and that either car weighed but a little less than 2 tons. Her reasoning that the weights of the cars is of significance is not clearly set forth, but we gather she contends that cars of such weight would not have skidded to the extent they did unless the impact was of great force. Plaintiff maintains the sound of the crash heard by the witness ½ mile away is significant. It was

an "unusual" noise but not a "real loud" noise. We think the noise of the impact as described is of no import. Plaintiff's principal contention is that the decedent's heavy vehicle "traveled or was propelled" after the impact 53 feet 8 inches into the field, overturned, and was badly wrecked. This, she says, is proof that it was struck with great force and she attributes this force to that applied by the defendant's car. Yet this cannot be said to always follow. If a vehicle has its course diverted by an impact with another car, might not it proceed on and overturn either because of its own speed or its driver having lost control? Defendant calls attention to the fact that his car traveled without being diverted in its course to so great an extent and was not so badly damaged. From this he infers it was proceeding at a lesser speed. We do not ascribe to the theories of either party as to who entered the intersection first, or with respect to which vehicle was proceeding at the greater speed, or whether the speed of either was the more reasonable.

"Where several inferences are deducible from facts presented, which inferences are opposed to each other but equally consistent with the facts proved, the plaintiff does not sustain his position by a reliance alone on the inference which would entitle him to recover." Shamblen v. Great Lakes Pipe Line Co., 158 Neb. 752, 64 N. W. 2d 728.

We think in the present case many inferences may be drawn from the physical evidence presented and none are sufficiently supported from which a fair and reasonable conclusion can be drawn. Defendant had the directional right-of-way unless the decedent entered the intersection first, in which event decedent obtained it by so doing. Who entered the intersection first? From the evidence one cannot tell. In case of excessive speed the right-of-way of either might be forfeited. Was there excessive speed, and if so which driver maintained it? The circumstantial evidence is insufficient to re-

solve any of these questions fairly and reasonably. It presents nothing but conjecture and speculation, and that should not be submitted to a jury. The trial court committed no error in sustaining the motion to dismiss.

The plaintiff finally contends that the trial court erred in refusing to admit evidence that the traffic normally was greater on the north and south road than on the other. It seems to have been offered in an effort to alter the statutory rule under section 39-728, R. S. Supp., 1963, with respect to the vehicle on the right having the right-of-way under ordinary conditions. There was no traffic on either road at the time of the accident. What traffic might have been on them at other times is not material.

After a review of the evidence in the light of the rules stated, we find no error attributable to the judgment of the trial court and it is affirmed.

AFFIRMED.