ALICE D. MITCHELL, ADMINISTRATRIX OF THE ESTATE OF FERGUSON S. MITCHELL, DECEASED, APPELLANT, V. JUDITH M. EYRE, EXECUTRIX OF THE ESTATE OF MICHAEL J. EYRE, DECEASED, APPELLEE.

206 N. W. 2d 839

Filed May 4, 1973. No. 38561.

Joseph K. Meusey of Fraser, Stryker, Marshall & Veach and Robert E. O'Connor of Ross & O'Connor, for appellant.

Fredric H. Kauffman of Cline, Williams, Wright, Johnson & Oldfather, for appellee.

Heard before WHITE, C. J., SPENCER, BOSLAUGH, SMITH, McCOWN, NEWTON, and CLINTON, JJ.

SPENCER, J.

This is a wrongful death action arising out of a crash October 4, 1964, during an effectiveness test of the search and rescue capabilities of the Nebraska Wing of the Civil Air Patrol. Both occupants of the aircraft were killed. The parties to the action are the widows and personal representatives of the decedents. The case was tried to a jury which returned a verdict for the defendant. Plaintiff appeals. We affirm.

Both decedents Mitchell and Eyre were members of the Nebraska Wing of the Civil Air Patrol. Mitchell had held a pilot's license since September 10, 1958. Because his log book was unavailable, the extent of his actual experience could not be ascertained. However, he had been an active member of the Civil Air Patrol from 1959. At the time of his death he occupied the position of a training officer. Eyre began flying in 1963. He qualified for a private pilot's license in October of that year. His log book indicates that he had 87 hours and 55 minutes of flying experience. He became a member of the Civil Air Patrol in September 1963.

For the purpose of the test, a simulated wreck had been placed upon the Leonard Sisel farm ½ mile east and 2 miles north from Bee, Nebraska. Participation was entirely voluntary. The aircraft, an Aeronca L-16, was a tandem-seated plane with dual controls, that is to say the plane could be operated from either of the two seat positions. In the investigation which followed the crash, it was determined that both controls were installed and operating.

The Civil Air Patrol form shows Eyre as the pilot in command and Mitchell as the observer. While Eyre was the pilot at take-off, one of plaintiff's witnesses, a lieutenant colonel in the Civil Air Patrol, testified that

insofar as the Civil Air Patrol is concerned, it is possible for the observer, if he is a licensed pilot, to be flying the aircraft at any given time. He has done so as an observer.

The crash occurred at the edge of a milo field in terrain which was described as level, rolling, and farm ground. The site was an open or noncongested area. The weather was clear, with unlimited ceiling and visibility of more than 15 miles. The wind at the time of the crash was from 340 degrees, with a velocity of 14 knots and gusts to 22 knots. The temperature was 57 degrees Fahrenheit. The estimated time of departure on the mission was approximately 9:45 a.m. The time of the crash is estimated at approximately 11 o'clock a.m. The site of the crash was approximately 30 miles from Wahoo, the point of take-off.

There were four eyewitnesses to the crash. The first, Mrs. Leonard Sisel, testified she first saw the plane sometime around 10:30 a.m. It made two turns over her farm and then flew to Dwight, Nebraska. It then returned and started circling the milo field which is just north of a tree windbreak on the Sisel farm. The windbreak is just north of the house which faces east. She stood on the north edge of the windbreak with her children and watched the plane circle two or three times. She then testified: "A. On the last circle it seemed to have speeded up, and started going down quite rapidly; and it turned out over the road, and — Q. The road in front of your house? A. That's right. Right in front of our house. It turned out over the road, and cleared the electric wires, and was heading west, and then it was quite low over the field. Then it kind of straightened up like it was going to land, and right then its wings tipped straight up and down like this (indicating), and it went down. * * * Q. Then it went out over that road, and then came back in? A. Yes. It swung out over the road, cleared the wires, and headed back west. Q. Then it went up? A. Then

suddenly his wings flipped up like this (indicating), and he went down. Q. If you would, when you say the wings flipped up, would you show us what you had in mind when you say the wings flipped up? A. The wings flipped up like this (indicating). Q. How? A. He was coming around this way (indicating), and came out over the road this way (indicating), and then his wings went like this (indicating), and he went clear down. Q. Almost perpendicular? A. That's all I saw. There is a very slight — the land isn't completely level. There is a very slight incline right there. I didn't exactly see it hit the ground, but it looked like it was absolutely straight up and down like this (indicating), and the kids figures he was going to land, and they couldn't figure out how it could land in that position. Q. You didn't see it hit the ground? A. No."

Vic Semin, a farmer living ½ mile north of the Sisel farm was watching the plane from his yard. He saw the plane flying toward the north, saw it turn west, and it leaned over and went out of sight. Mrs. Semin, who was with her husband, saw only one circle of the flight and had no opinion as to the height of the plane.

Robert Washington, a major in the Civil Air Patrol at the time of the trial, was in command of a ground mobile unit equipped with a radio participating in the test. He watched the plane circle twice, watched it come back out over the road starting a third circle, and then it disappeared as it flew west of a building which he described as a barn which blocked his view.

No purpose will be served by reviewing the expert testimony or the technical data received in evidence. None of the eyewitnesses could testify as to who was piloting the aircraft at the time of the crash.

At the close of the plaintiff's case, the defendant moved for a directed verdict. Included among the reasons assigned was the fact that the evidence failed to show Michael Eyre was piloting the aircraft at the time of

the accident. It was a dual control aircraft which could be operated from either seat, and there is no proof in the record as to which one of the decedents was actually flying it at the time of the crash. This motion should have been sustained unless there is some legal presumption that Eyre, who was the pilot at take-off, was the pilot at the time of the crash.

Plaintiff's case is bottomed on the premise that the pilot in command of an aircraft is legally presumed to have been in control of it at the time of the accident if there is no direct evidence as to who was actually in control. There is an Annotation discussing this question in 36 A. L. R. 2d 1290.

At the outset, we suggest that in any action for injuries sustained in an airplane accident the issues of negligence, proximate cause, and contributory negligence invariably turn upon the question of who was piloting the plane at the time of the crash. It is necessary, therefore, for one seeking to recover in such action to establish the identity of the operator of the plane at the time of the accident. Where the aircraft is equipped with dual controls and both occupants are pilots, proof as to who may have been piloting the craft at the time of take-off, in our judgment, should not be conclusive where, as here, the crash occurs more than an hour later.

There are a number of decisions dealing with the question of presumption in these situations. Those cited by plaintiff which hold that a presumption exists can be readily distinguished from the facts in the instant case.

In Bird v. Louer (1933), 272 Ill. App. 522, where the court found the presumption to exist, Meyer, operator of the plane, was an experienced pilot. The other occupant was a passenger who had no experience piloting an airplane.

In Drahmann's Administratrix v. Brink's Administratrix (1956, Ky. App.), 290 S. W. 2d 449, the Kentucky

court held the facts sufficient to create a rebuttable presumption that Brink was the pilot of the plane at the time of the crash. In that case, however, Brink, the owner of the plane, was an experienced pilot, whereas Drahmann had no flying experience at all.

Lange v. Nelson-Ryan Flight Service, Inc. (1961), 259 Minn. 460, 108 N. W. 2d 428, involved a crash killing both occupants, one of whom was an instructor and the other a trainee. The Minnesota court there determined the instructor was the pilot in command.

Bruce v. O'Neal Flying Service, Inc. (1949), 231 N. C. 181, 56 S. E. 2d 560, 12 A. L. R. 2d 647, involved a public demonstration of airplane maneuvers. For the occasion, the plane was piloted by an employee of the owner. The plaintiff's decedent was aloft strictly as a passenger.

Boise Payette Lumber Co. v. Larsen (9th Cir., 1954), 214 F. 2d 373, has no relevance herein. It involved an action on behalf of a business-invitee where the aircraft was piloted by the company's salesman.

Insurance Co. of North America v. Butte Aero Sales & Service (1965), 243 F. Supp. 276, is an opinion of the United States District Court of Montana. The owner of the plane was the pilot at take-off. The other decedent had never flown the plane. The plane had been observed going through various maneuvers and was flying quite low.

Whittemore v. Lockheed Aircraft Corp. (1944), 65 Cal. App. 2d 737, 151 P. 2d 670, tends to support plaintiff's general position. It is not pertinent herein in view of the testimony of one of plaintiff's witnesses that insofar as the Civil Air Patrol is concerned, it is possible for an observer, if he is a licensed pilot, to pilot the aircraft at any given time.

The other case cited by plaintiff, In re Estate of Hayden (1953), 174 Kan. 140, 254 P. 2d 813, supports defendant's rather than plaintiff's position. It was an action by a widow against the personal representative

of the deceased owner of the airplane for the wrongful death of her husband. The husband, the owner, and a third party, all of whom had flying experience, were flying together at the time of the crash. The owner and third party had access to the airplane's dual controls. The court reversed a jury verdict for the plaintiff against the owner, holding that a demurrer to plaintiff's evidence should have been sustained. There, the owner of the plane was at the controls at the time of take-off, and the plane could not have been taken off from the right-hand position occupied by the third party. The position of the two parties did not change during the course of the flight. There was also evidence that the owner had flown the plane in a reckless manner on other occasions. The court held, giving the plaintiff's evidence the benefit of every inference to which it may be entitled, still any answer to the question as to who was actually at the controls of the plane at the moment of the tragedy must be predicated upon speculation, surmise, or conjecture.

From a review of the decisions pro and con, we are convinced those upholding the contrary view are entitled to the greater weight. They are more analogous to the present situation and more in conformity with our holdings in tort actions.

Madyck v. Shelley (1938), 283 Mich. 396, 278 N. W. 110, was a case where both occupants of the airplane, which had dual controls permitting operation from either cockpit, were experienced flyers. The dual controls were connected after the crash in which both occupants were killed. The court held evidence that the occupant of the front cockpit had the sole right to fly the plane, of which he was a part owner, was insufficient to establish that he was the pilot at the time of the crash.

Towle v. Phillips (1943), 180 Tenn. 121, 172 S. W. 2d 806, was an action for the death of a passenger who had access to one of the dual controls of an airplane which climbed vertically from a low altitude before

crashing, killing the pilot and the passenger. The court held the evidence insufficient to take the question of the pilot's negligence to the jury. The following from the opinion is pertinent herein: "No doubt the vertical climb was the proximate cause of the crash. On the record before us it may have been caused by Webb's handling of the controls available to him, or by Towle's handling of the controls available to him, or it may have been caused by something not explained, for which neither man was responsible. It would be a guess to say that Webb's negligence was the responsible agency."

In Budgett v. Soo Sky Ways, Inc. (1936), 64 S. D. 243, 266 N. W. 253, the trial court sustained a motion for judgment notwithstanding the verdict, after permitting the case to go to the jury. The Supreme Court affirmed the judgment, holding the plaintiff had failed to sustain the burden of proof. It speculated either of the parties may have taken hold of the control stick and moved it in such a way as to have nosed the plane toward the ground, or the pilot may have made a false move and pulled the stick the wrong way, or he may have made too short a turn or too steep a bank and lost flying speed of the ship for which reason it fell to the ground.

In Hall v. Payne (1949), 189 Va. 140, 52 S. E. 2d 76, the trial court permitted the case to go to the jury. Thereafter, on motion, the verdict for the plaintiff was set aside. The Supreme Court affirmed the judgment. It held that to prove possibility only, or to leave the issue to surmise or conjecture, is never sufficient to sustain a verdict. While the main question in that case was whether there was sufficient evidence of negligence on the part of the pilot rather than his identity, the rule announced applies with equal force to a situation where the question of who was operating a plane is the decisive issue.

In Morrison v. Le Tourneau Co. of Georgia (5th Cir., 1943), 138 F. 2d 339, a crash of a two-seated dual control plane killed the pilot and the passenger. The court

said that no one could answer a number of stated questions as to what or who caused the crash, including: "Did Morrison get excited and grab the controls?" It is also observed that theories could doubtless be multiplied as to how the accident occurred, but each must have as its basis speculation and conjecture.

In re Estate of Rivers (1954), 175 Kan. 809, 267 P. 2d 506, involved a crash of two planes in midair. The owner of the planes sought to recover the value of the planes from the estate of one of the pilots. That plane was equipped with dual controls. Two men were riding in it. Each of them had equal access to the controls. The Supreme Court, affirming the sustaining of defendant's demurrer to the evidence, said that on the facts presented, any finding of the jury that defendant's decedent was piloting the plane at the time of the crash would be based upon mere surmise and conjecture.

Plaintiff may be right in urging that the crash occurred because the plane was flying too low to recover from a stall. Granting this fact and granting also that it was the result of the negligence of one of the parties, still leaves many unanswered questions. The dual controls were connected. Regardless of which one of the decedents may have been operating the plane the other could have taken some action which precipitated the difficulty. Any conclusion we draw must be based upon surmise and conjecture.

In Mills v. Bauer (1966), 180 Neb. 411, 143 N. W. 2d 270, we held: "The burden of proving a cause of action is not sustained by evidence from which negligence can only be surmised or conjectured." To recover herein the plaintiff was required to prove who was piloting the plane at the time of the crash. Until she has done so she has not met her burden of proof. The finding of negligence is immaterial until we can determine the identity of the person to be charged with responsibility for the negligence. An issue depending entirely upon

speculation, surmise, or conjecture is never sufficient to sustain a judgment. Consequently, a judgment solely based upon speculation, surmise, or conjecture must be set aside.

Defendant's motion for a directed verdict at the close of the plaintiff's evidence should have been sustained. While the trial court submitted the case to the jury, the verdict returned was for the defendant. As we determine on the record herein that the plaintiff did not carry her burden of proof, we would have been required to have set aside any other verdict than one for the defendant. In the light of this conclusion, there is no need to discuss the errors assigned by the plaintiff. We therefore affirm the judgment for the defendant.

AFFIRMED.