LISA–JET, INC., Appellant,

v.

DUNCAN AVIATION, INC., Appellee.

No. 77–1371.

United States Court of Appeals, Eighth Circuit.

Submitted Nov. 17, 1977.

Decided Feb. 2, 1978.

Rehearing and Rehearing En Banc Denied Feb. 27, 1978.

Fredric H. Kauffman, Cline, Williams, Wright, Johnson & Oldfather, Lincoln, Neb., for appellant.

Norman Krivosha, Ginsburg, Rosenberg, Ginsburg & Krivosha, Lincoln, Neb., for appellee.

Before VAN OOSTERHOUT, Senior Circuit Judge, and LAY and STEPHENSON, Circuit Judges.

STEPHENSON, Circuit Judge.

Plaintiff Lisa-Jet, Inc. below sought recovery from defendant Duncan Aviation, Inc. for destruction of its Learjet 25, which crashed shortly after take-off from the Lincoln, Nebraska, municipal airport. This diversity action was tried to a jury; however,

the district court[1] sustained defendant's motion for a directed verdict at the close of plaintiff's case and thereafter denied plaintiff's motion for new trial. This appeal followed. We affirm the district court.

We, of course, review the record under the well established principles that "[a] [motion for a] directed verdict should be granted 'only when all the evidence points one way and is susceptible of no reasonable inferences sustaining the position of the nonmoving party.' *Decker-Ruhl Ford Sales, Inc. v. Ford Motor Credit Co.*, 523 F.2d 833, 836 (8th Cir. 1975)." *Barclay v. Burlington Northern, Inc.*, 536 F.2d 263, 267 (8th Cir. 1976). "In making this determination, the evidence, together with all reasonable inferences to be drawn therefrom, must be viewed in the light most favorable to the nonmoving party." *Decker-Ruhl Ford Sales, Inc. v. Ford Motor Credit Co.*, supra, 523 F.2d at 836. A directed verdict should not be granted unless the evidence is such that without weighing the credibility of the witnesses there can be but one reasonable conclusion. *Hernon v. Revere Copper & Brass, Inc.*, 494 F.2d 705, 709 (8th Cir.), *cert. denied*, 419 U.S. 867, 95 S.Ct. 124, 42 L.Ed.2d 105 (1974).

In August 1973 Lisa-Jet purchased the subject Learjet 25 with the intention to lease it to Planes, Inc. for use in charter operations as it had frequently done in the past with other aircraft. Lawrence J. Block was president of both Lisa-Jet and Planes. Planes made arrangements with Duncan Aviation to have Horn, an employee of Planes, and Burke, a prospective employee, instructed in the operation of a Learjet 25[2] so that they might obtain type ratings in the operation of this aircraft. Planes agreed to pay for the instruction and expenses; Lisa-Jet supplied the aircraft. Duncan selected one of its instructors, David Williams, to provide the instruction. Williams flew to Memphis, picked up the Learjet 25 together with Horn and Burke, and returned to Lincoln.

Instructor Williams, with the approval of Block, made the necessary arrangements for Burke alone[3] to take the test and check ride in Denver, Colorado, on September 24. Burke was issued his type rating and thereafter Burke and Williams flew back to Lincoln. That evening Block contacted Burke, who indicated he had received his type rating, but stated that he was "not really comfortable in that airplane yet" and requested permission to use the plane for a couple of hours more training the following day. Block agreed, expecting Burke to return to Atlanta the next day with the plane after the additional flight training.

The following morning at 7:07 a. m. Instructor Williams contacted Lincoln Flight Service Center by commercial telephone and requested a weather briefing to Omaha, Nebraska. He received a local weather briefing from air traffic controller Sharp indicating a 100-foot ceiling and visibility of 3/8 of a mile. Williams also filed an instrument flight rules (IFR) flight plan for Omaha. Williams told Sharp that he was the pilot and Sharp entered the name Williams as pilot on the flight plan record. Four minutes later plaintiff's Learjet contacted "ground control" on its radio and received taxi instructions. At 7:17 a. m., ten minutes after the weather briefing, plaintiff's Learjet initiated its take-off roll, at which time radar departure picked up the Learjet on its scope. Radio contact with the Learjet was established near the end of the runway, as the plane reported "climbin' to nine." Within a few seconds radar contact was lost. Shortly thereafter the aircraft was found lying in a field approximately 3/4 mile from the end of the runway. Both Burke and Williams were killed in the crash. Subsequent investigation showed that Burke occupied the left-hand seat and Instructor Williams was in

---

1. The Honorable Richard E. Robinson, Senior District Judge, United States District Court for the District of Nebraska, presided.

2. Both Horn and Burke were licensed and experienced jet aircraft pilots. However, neither

had the required "type rating" for the Learjet 25.

3. Horn needed more work on the plane before he would be in a position to pass the check.

the right-hand seat. This was in accord with the normal practice of the trainee pilot occupying the left seat and the instructor pilot the right seat.

Lisa-Jet below and on this appeal asserts evidence was offered sufficient to create submissible issues for the jury on two distinct theories of recovery. Initially Lisa-Jet asserts that Duncan converted its aircraft to Duncan's own use when it commenced the flight from Lincoln to Omaha for the purpose of carrying out a charter flight from Omaha to Montreal. Alternatively, Lisa-Jet urges that Duncan is responsible for any negligent operation of the aircraft, regardless of who the active tortfeasor might be, due to the fact that the plane was under the command of Duncan's instructor pilot, Williams, and further that Duncan's instructor pilot was guilty of specific acts of negligence as instructor pilot.

Lisa-Jet's claim that there was a conversion of the aircraft by Duncan at the time of the accident is devoid of merit. The record disclosed that after its arrival in Omaha the Learjet was to pick up passengers for a charter flight to Montreal. Duncan's chief executive officer, Donald Duncan, testified that the charter flight had been arranged with the express permission of Mr. Block. The latter denied any knowledge concerning the same. Assuming arguendo that the charter was not authorized, it was not to begin until the plane arrived in Omaha, which it never did. At the time of the crash the plane was commencing a training flight approved by Mr. Block, Lisa-Jet's president. This claim was properly dismissed.

Lisa-Jet contends that even in the absence of proof of specific acts of negligence on the part of Williams, negligence concepts impose liability on Duncan, his employer, by virtue of the instructor relationship which existed at the time of the flight in question. In effect appellant asserts that Instructor Williams was the pilot-in-command of the aircraft at the time of the accident and is vicariously liable for any negligence which was a proximate cause of the accident regardless of proof as to which person was

piloting the plane at the time of the crash. Appellant cites *Lange v. Nelson-Ryan Flight Service, Inc.*, 259 Minn. 460, 108 N.W.2d 428 (1961), *cert. denied*, 371 U.S. 953, 83 S.Ct. 508, 9 L.Ed.2d 500 (1963), in support thereof. This case holds that the instructor, as the pilot-in-command, is responsible for any negligence in the operation of an aircraft regardless of whether or not it could be established that he was in actual operation of the controls at the time.

We agree with the district court that the applicable law of Nebraska imposes no such presumption of responsibility where, as here, both pilots were capable of operating the aircraft at the time of the accident. In *Mitchell v. Eyre*, 190 Neb. 182, 206 N.W.2d 839 (1973), the evidence disclosed decedent Eyre as the pilot-in-command at the take-off and decedent Mitchell as the observer. There, as here, it was possible for either person to be flying the aircraft at any given time. The identity of the pilot at the time of the crash could not be established. In affirming a verdict for the defendant the Nebraska Supreme Court stated that a directed verdict at the close of the plaintiff's evidence should have been sustained. The court's comments which are pertinent here were as follows:

Plaintiff may be right in urging that the crash occurred because the plane was flying too low to recover from a stall. Granting this fact and granting also that it was the result of the negligence of one of the parties, still leaves many unanswered questions. The dual controls were connected. Regardless of which one of the decedents may have been operating the plane the other could have taken some action which precipitated the difficulty. Any conclusion we draw must be based upon surmise and conjecture.

* * * To recover herein the plaintiff was required to prove who was piloting the plane at the time of the crash. Until she has done so she has not met her burden of proof. The finding of negligence is immaterial until we can determine the identity of the person to be charged with responsibility for the negli-

gence. An issue depending entirely upon speculation, surmise, or conjecture is never sufficient to sustain a judgment.

*Mitchell v. Eyre, supra,* 206 N.W.2d at 844. *See Udseth v. United States,* 530 F.2d 860 (10th Cir. 1976). We are satisfied that the district court correctly determined that Lisa-Jet could not recover under the pilot-in-command theory.

 Finally, Lisa-Jet maintains that its evidence created a submissible case with respect to its claim that the accident was caused by independent acts of negligence on the part of Instructor Williams, as follows: weather conditions were such that the take-off should have been made by the instructor; inadequate preflight and pre-take-off checks; flaps in "up" position; failure to make certain the aircraft was kept and maintained in a normal climb immediately after take-off; failure to recognize the aircraft was losing altitude after take-off; and failure to recover the aircraft and resume flight after initial impact.

Lisa-Jet sought to establish these specifications of negligence by introducing the opinions of various witnesses, which in turn were of necessity based upon circumstances surrounding the crash of the airplane. The district court, in commenting that the test of the sufficiency of circumstantial evidence under federal law and Nebraska law was substantially the same, stated:

The test of the sufficiency of circumstantial evidence under federal law is as follows:

"It is not necessary in establishing a necessary fact by circumstantial evidence that a party upon whom the burden of proof rests shall present evidence to dispel all contradictory inferences. It is necessary, however, that such party produce evidence of facts and circumstances which may be accepted by the trier of the fact as establishing with reasonable certainty the truth of the inference contended for.

\* \* \* \* \* \*

"If the proven facts give equal support to each of two inconsistent inferences then judgment must go against the party upon whom rests the necessity of sustaining one of these inferences. The essential inference cannot be left to conjecture and speculation. \* \*."

*Ford Motor Company v. Mondragon,* 271 F.2d 342, 345 (8th Cir. 1959). The Court notes that the Nebraska standard for the sufficiency of circumstantial evidence is substantially the same as the federal test. In the case of *Bedford v. Herman,* 158 Neb. 400, 63 N.W.2d 772 (1954), the Nebraska court held that

in order for circumstantial evidence to be sufficient to require the submission of an issue of negligence to a jury it must be such that a reasonable inference of negligence arises from the circumstances established. If such evidence is susceptible to any other reasonable inference, inconsistent with the inference of negligence on the part of the party charged, it is insufficient to carry the case to the jury.

*Id.* at 774.

We are not persuaded that the Nebraska standard is the same as the federal standard. *See Twin City Plaza, Inc. v. Central Surety & Ins. Corp.,* 8 Cir., 409 F.2d 1195, 1202 n. 8. *But see Sherman v. Travelers Indemnity Co.,* 193 Neb. 104, 225 N.W.2d 547 (1975). However, we need not decide which standard controls because we are satisfied from our examination of the record that under either the federal or state standard the district court's determination that the essential inference of negligence on the part of Instructor Williams can only be made through conjecture and speculation is correct. The mere fact that the accident happened does not give rise to an inference of negligence on the part of anyone. A careful review of the record leaves but one impression—the cause of the accident is unknown.

Affirmed.